545 A.2d 72

**Edward V. HANLON**

v.

**Russell B. DAVIS, Jr., et al.**

**No. 1163, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Aug. 4, 1988.

Edward V. Hanlon, Seabrook, pro se.

Jeffrey C. Taylor (Tomes, Salter & Taylor, on the brief), Rockville, for appellees.

Argued before BISHOP, ALPERT, and ROBERT M. BELL, JJ.

ALPERT, Judge.

The modern law of defamation is fraught with perplexities. This case will illustrate some of them.

In this defamation action Edward V. Hanlon, appellant, prevailed following a jury trial in the Circuit Court for Prince George's County. The jury, however, awarded appellant only nominal damages. Appellant then noted this appeal, alleging that trial court errors severely prejudiced him on the issue of damages. Appellant raises two issues:

I. Whether the court erred in excluding as hearsay testimony on the damage to appellant's reputation caused by the libelous document.

II. Whether the court erred in ruling as a matter of law that appellant was a public figure.

## FACTS

During appellant's campaign for reelection as president of a small government union local located in the basement of the Bureau of the Census, the appellees, Russell B.

Davis, Jr. and Jose Talavera–Toso III published a libelous [1] document concerning appellant's activities. The document, a letter, was distributed to all 450 union members through the internal inter-office mail system. The letter was also posted on bulletin boards in buildings of the Suitland Federal Center, where both union and non-union members worked. In addition, the letter was displayed on a bulletin board in a public area known as the "Sunny Spot Lobby." Mr. Hanlon testified at trial that he lost his bid for reelection as a direct result of the publication of this letter.

At the conclusion of the trial, the court ruled that appellant was a public figure as a matter of law. Accordingly, the court instructed the jury on the "actual malice" standard and that appellant could recover only actual and puni-

---

1. The jury found that the document was defamatory and was published with knowledge that it was false or with reckless disregard for its truth or falsity. Appellees do not contest this finding.

 The defamatory portion of the letter read:

 > One of our Local's most important policy initiatives and one on which it has directly or indirectly spent over $10,000 is certainly one of great importance to the average member. That, of course, is the attempts to get our Local President promoted to a GS 13/14 position. I'm sure you have seen the articles and advertisements in the Union newsletter on this ... bread-and-butter issue. He hasn't been too shy about pushing for it using his own clout. If he gets it, it will be the third straight promotion the Union helped him get. Let's wish him well.

 This statement is libelous per se:

 > As a general rule, words, whether written or spoken, are defamatory or actionable per se, i.e., without proof of special damages, if they directly tend to prejudice or injure anyone in his profession, trade, or business.

 53 C.J.S. *Libel and Slander* § 28 (1987); *Kilgour v. Evening Star Co.,* 96 Md. 16, 24, 53 A. 716 (1902).

 Special federal laws regulate the use and handling of union funds. For example, the Labor–Management Reporting and Disclosure Act provides:

 > Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

 29 U.S.C. § 501(c) (1982).

tive damages. Although appellant apparently requested an instruction on presumed damages, the court's instruction did not provide therefor.

Appellant asserts that he was unable to prove damages because the trial court excluded all evidence on the damage to his reputation. According to appellant, this exclusion was reversible error because "demonstrating damage to reputation is one of the traditional means of supporting recovery in a defamation action and damage to reputation is one of the types of injuries for which plaintiff has always been entitled to recover in a defamation action." Appellees respond that the testimony was properly excluded because no foundation was laid for its admission.

## I. Reputation Evidence

In his first assignment of error, appellant contends that the trial court erred in excluding testimony on the harm caused to his reputation by the libelous document. Appellant subdivides this argument, attacking the exclusion of two types of testimony: reputation generally, and the reaction of third parties. We address each in turn.

### A. *Damage to Reputation*

Defamation law "protects the interest in reputation—the interest in acquiring, retaining, and enjoying a reputation as good as one's character and conduct warrant." 2 Harper, James, and Gray, *The Law of Torts* § 5.1 at 24 (2d ed. 1986). In a defamation action, reputation evidence on the issue of damages is not offered evidentially, but is offered to prove an element of the cause of action. Where one with knowledge of reputation testifies there is no hearsay problem. *See* 1A Wigmore, *Evidence* § 70.2 (Tillers rev. 1983); McLain, 6 *Maryland Practice, Maryland Evidence* § 427 (1987). Notwithstanding, the evidence offered must be competent and relevant. *See generally* 50 Am.Jur.2d *Libel & Slander* § 472.

Appellant points to the following colloquy as representative of the testimony erroneously excluded by the trial

court. The witness is Robert John Lamberd, an employee of the Bureau of Census and a union member.

Q [by Mr. Levy, plaintiff's counsel]: Based on discussions with other employees, how do you think the exhibit in front of you [the libelous letter] affected Ed's reputation among those who read it?

A: It certainly didn't do him any good.

MR. TAYLOR [Defense Counsel]: I object to what his discussions with others led him to believe.

THE COURT: Sustained.

Similarly, Steven O. Haselden, another co-employee, was asked: "Based on the conversations that you had how did this letter affect Ed's reputation in the work force and the community?" Edward Hanlon, also a Bureau of Census employee, was asked: "What effect do you believe this letter had on the outcome of the '85 election?" Each time, defense counsel's objection was sustained.

There is disagreement among the jurisdictions on the admissibility of testimony on the issue of damages as to the effect of defamatory matter on third parties. The majority, however, admit testimony on the plaintiff's behalf that is neither opinion nor hearsay. *See,* Annot., 12 A.L.R.2d 988, 1012 § 4. Opinion evidence is generally inadmissible. "Opinions of witnesses as to the injurious effect of the statement complained of are generally inadmissible. Thus, as a general rule the court will exclude opinion evidence upon behalf of the plaintiff that his reputation was injured...." 50 Am.Jur.2d, *Libel & Slander* § 473.

In Maryland, the exclusion of opinion testimony in defamation cases has its roots in a case over 150 years old. In *Law v. Scott,* 5 Harr. & J. 438 (1822), the plaintiff alleged that slanderous remarks about him were made to a United States Senator at a time when the plaintiff's nomination to a federal office was pending before the Senate for confirmation. The testimony of several senators that they heard the defendant's defamatory statements was admitted. One senator testified that he abstained from voting because of

the defamatory statement, and another testified that he voted against the plaintiff because of the charges. The admissibility of this testimony was upheld on appeal to the Court of Appeals of Maryland. The admission of the deposition testimony of a third senator, however, was held error. The third senator had stated, "the charges ... could not have failed to have produced [the plaintiff's] rejection, even if there existed no other reason for it; and they doubtless, I presume, had a very considerable effect in producing it." *Id.* at 374. The Court of Appeals held this testimony inadmissible, explaining: "This is not a deposition to facts only, resting in the immediate knowledge and recollection of the witness, but is a plain expression of his opinion upon subjects intimately connected with the discussion ..." *Id.*

The questions in the case at bar clearly called for the witnesses' opinions about what effect the libelous document had on others, and the court correctly sustained counsel's objections. When a witness was questioned about his own reaction to the defamatory material, he was allowed to respond. At one point, for example, the following colloquy transpired:

MR. LEVY: In your opinion, did this affect Ed's reputation at the Bureau of the Census?

THE WITNESS: Yes, it did.

MR. TAYLOR: Objection, Your Honor as to what other people may have thought about this document.

THE COURT: Sustained. If you want to ask her did this letter affect her opinion of Mr. Hanlon's reputation, I will allow that.

MR. LEVY: Fine.

What effect, if any, did it have on your personal knowledge of Mr. Hanlon's reputation?

THE WITNESS: Had I not been one of the individuals within a Union officer or Steward who had access to the true information I would have thought this was devastating that he was a—that he was a crook, and that he was doing horrible things.

We conclude on the record before us that the court properly excluded opinion testimony.

### B. *Third Party Reactions*

In his second assault on the exclusion of reputation evidence, appellant contends the court erred in excluding third party reactions that were admissible under the state-of-mind exception to the hearsay rule. Relying on *Embrey v. Holly*, 48 Md.App. 571, 429 A.2d 251 (1981), *affirmed in part, reversed in part on other grounds*, 293 Md. 128, 442 A.2d 966 (1982), appellant argues that certain testimony should have been admitted. The first alleged error occurred during the testimony of Robert John Lamberd, an employee of the Census Bureau and union member. During direct examination, the following colloquy took place:

Q [Mr. Levy, plaintiff's counsel]: What knowledge do you have that non-Union members were aware of this letter and its contents?

A: Mr. Glen Glazier—

MR. TAYLOR: Objection to any hearsay, anything he heard from other people.

THE COURT: Sustained.

. . . . .

MR. LEVY: Your Honor, could we approach the bench?

THE COURT: Yes.

(At the bench.)

MR. LEVY: Under the case of Embrey versus Holly from the Court of Special Appeals, 1981. It was stated that the testimony of a television personality and receptionist at the television station regarding anonymous phone calls, each received after radio broadcasts are made alleged defamatory statement was admissible under the exception to the hearsay rule.

. . . . .

MR. TAYLOR [Defendant's counsel]: Could you proffer what the statement will be made to?

MR. LEVY: That he had a discussion with Glen Glazier, a non–Union member, and that Glazier was very upset about the letter. He felt very badly towards Hanlon.

MR. TAYLOR: How did the publication reach him?

MR. LEVY: I believe he read it on the bulletin board. He approached the witness.

MR. TAYLOR: You don't know how?

MR. LEVY: I can ask him. I think he read it on the bulletin board. I know he approached him in the Sunny Spot lobby and talked to him for a minute or two and then left. That is the proffer of what he will testify to....

THE COURT: What are you offering it for, Mr. Levy?

MR. LEVY: I'm offering it to show that it was published to non-Union members.

THE COURT: You have already shown that through this witness.

MR. TAYLOR: Shown a possibility.

MR. LEVY: There is a specific example of a non-Union member seeing it.

THE COURT: That is already admitted. I don't know that I can agree that thereafter this witness on the stand should be allowed to testify what that third person said.

We find that this exchange falls within the ambit of admissible testimony under *Embrey, supra.* In that case Chief Judge Gilbert wrote for this court:

It is well established that in libel and slander cases statements made by third persons in reaction to the alleged defamatory comment are admissible under the state-of-mind exception to the hearsay rules.... The evidence, while hearsay, is poignantly relevant in order to demonstrate "the extent and effect of the publication and to sustain ... [plaintiff's] claim of general damage to ... [his] reputation and profession." ... The only requirement is that the statement be made with "apparent sincerity."

*Id.* at 599–600, 429 A.2d 251 (citations omitted). Although appellant did not specify the state-of-mind exception as the

hearsay exception he was relying upon, his intent was reasonably clear from his proffer.

We also find a second example of competent testimony that was excluded:

Q: [to appellant]: How many non-Union members [were aware of the libelous letter]?

A: I have some specific recollections of people specifically—that they came to me specifically to talk about it.

MR. TAYLOR: Objection as to what they came to talk to him about.

THE COURT: Well, I am going to let him go that far, but I am not going to let him say what those people said to him. That ought to be clear by now.

Although appellant could have argued his position with greater specificity and clarity, we hold that the court erred in excluding the testimony sought to be elicited in the foregoing exchanges. *Embrey* does caution, as appellee notes, that "[t]he determination of whether a statement is trustworthy of belief and, hence, admissible under the state-of-mind exception to the hearsay rule must be made on a case-by-case basis." *Id.* at 600, 429 A.2d 251. The pertinent rationale underlying the exception both here and in *Embrey* is that "the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed." *Id.* (citing 5 Wigmore, *Evidence* § 1422 (Chadbourn rev. 1974)). Although it is conceivable that the trial court could have determined that the subject testimony was not trustworthy and therefore was inadmissible, the record is clear that the court did not make this determination. Rather, the court excluded all testimony relating to third party statements as a matter of course.

■ As to the third ruling cited by appellant, we conclude that the appellant, not the court, erred. In that exchange, Ruth A. Sanders, a co-employee and fellow union member of appellant, was called to testify. During direct examination, the following colloquy took place:

Q: Based on your personal knowledge, what was the reaction of people who read this document to Ed?

MR. TAYLOR: Object to what other people reacted to.

THE COURT: Sustained.

MR. LEVY: Your Honor, can we approach the bench?

THE COURT: Very well.

(At the bench.)

MR. LEVY: The witness has specific knowledge of two people who discussed the letter within earshot of her. We are saying what she heard was the present sense impression to the document, their reaction, and that it should fall under the exception to the hearsay rule on that basis.

THE COURT: What exception?

MR. LEVY: Present sense exception.

Although the question was perhaps inartfully phrased, on the basis of counsel's proffer, we would have held the testimony admissible under *Embrey*. Appellant cannot now prevail, as he seeks to do, on the state-of-mind exception when the present sense exception was relied upon at trial.[2] *See* Md.R. 8–131(a).

Nevertheless, because of the erroneous exclusions of material evidence, we hold appellant is entitled to a new trial on the issue of damages. We must, therefore, address appellant's arguments on the question of what damages he is entitled to recover.

## II. Damages

 Appellant argues that the court erred in finding as a matter of law that he was a public figure. According to appellant, the court compounded this error by refusing to

---

**2.** Because the question is not properly before us, we express no opinion on whether the testimony was admissible under the "present sense impression" exception to the hearsay rule.

give the jury an instruction on presumed damages.[3] We
conclude that whether a public or private figure, appellant

---

3. It is debatable whether appellant actually requested an instruction
on presumed damages. The only reference to presumed damages in
appellant's "Suggested Jury Instructions" is contained in the following:
> 6. Plaintiff also asserts that he is entitled to exemplary or puni-
> tive damages:
> A person who has been defamed may be allowed presumed or
> punitive damages if when the defendant published the defamatory
> statement he knew it was false or where the character of the
> defamatory words and the circumstances of publication indicate
> that the defamatory statement was either false or published with
> reckless disregard as to whether it was false. Punitive damages
> may be allowed in such cases to serve as an example or warning to
> others. The financial condition of the defendant may be considered
> in determining the amount.

Thereafter, following the court's instruction to the jury (which did
not include the above or any other instruction on presumed damages),
appellant asserted: "I am satisfied with them, Your Honor." Appel-
lee, therefore, now responds that the appellant failed to preserve the
issue for our review. Md.Rules 2–520; 8–131(a).

Although appellant's failure to object to the instruction effectively
waived the "presumed damage" issue for the purposes of this appeal,
that waiver is not binding on the parties on remand for a new trial.
As explained in *Corpus Juris Secundum:*
> Where a motion for new trial has been sustained, the case stands
> as though there had never been a trial. The law of the case doctrine
> does not apply where the trial court grants a new trial, and rulings
> of the court at the former trial are not binding on the court at the
> new trial.

66 C.J.S. *New Trial* § 226 at 580 (1950) (footnotes omitted). The
result is that
> the issues stand as though they had never been tried, the cause is to
> be tried de novo, and the whole case, including the issues of fact at
> the former trial, is open for hearing and determination.

*Id.,* § 230 at 582.

The rule is similar when a case is remanded on one particular issue.
A new trial that is ordered solely for the purposes of determining
damages "is, as to that issue, a trial de novo." *Kimble v. Degenring,*
186 A. 451 (N.J.1936). "It [is] the duty of the trial court and jury to
consider the matter of damages as though it were never before
raised." *Id.*

Applying this rule of law, courts have permitted a plaintiff to
introduce additional evidence of damages at a new trial that was not
introduced at the original trial, *see id.,* and permitted the State to
object on retrial to evidence that was admitted at an earlier trial, *see*
*United States v. Akers,* 702 F.2d 1145 (D.C.1983). Similarly, in the
case *sub judice,* appellant will not be foreclosed from seeking pre-
sumed damages at a new trial on the issue of damages.

was entitled to an instruction on presumed damages because he proved that the defamatory publication was made with knowledge of its falsity or with reckless disregard of the truth (constitutional malice), *i.e.*, a person, whether a public or private figure, may recover presumed and punitive damages when he proves "constitutional malice." At common law, a statement that was libelous "per se" was viewed to be presumptively false and carried a presumption of injury to reputation. Thus, the plaintiff in such a defamation action could recover "presumed" or "general" damages for injury to reputation without proof of such injury. *Hearst Corp. v. Hughes*, 297 Md. 112, 466 A.2d 486 (1983). Professors Prosser and Keeton explicated the common law rule:

General damages, as that term is used in defamation actions, refer to losses sustained which are normal and usual and are to be anticipated when a person's reputation is impaired. When one's reputation is impaired, this affects one's relations with others, including business, social, religious, and family. The impairment of one's relations does interfere in a variety of unpredictable and unknowable ways with the enjoyment of life. Under the English and American common law ... harm to reputation was presumed from the publication of a libel or slander per se. Therefore, actual damages were normally assessable by the jury without proof by the plaintiff that there had been any impairment of reputation. Thus, general damages at common law were an estimate, however rough, of the probable extent of actual loss a person had suffered and would suffer in the future, even though the loss could not be identified in terms of advantageous relationships lost, either from a monetary or enjoyment-of-life standpoint. Since some of the interest served by way of protecting a good reputation are of a peace-of-mind and dignitary nature rather than economic in character, such losses are not readily measurable in monetary terms. However, it is often not necessary for the jury to believe that the plaintiff has suffered or will suffer

pecuniary or economic loss, even though some types of defamatory imputations are by their very nature calculated to result in economic loss, and can be presumed to have caused such.

*Prosser & Keeton on Torts,* § 116A at 843 (5th ed. 1984) (footnotes omitted).

The common law rule was circumscribed somewhat by the Supreme Court's decision in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), a case involving a "private person" plaintiff and a media defendant. *Gertz* held, in part, "that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Id.* at 349, 94 S.Ct. at 3011. If the plaintiff does not prove the defendant acted with "malice," recovery may be had for actual injury but not for presumed or punitive damages. Actual injury may include, in addition to out-of-pocket losses, "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350, 94 S.Ct. at 3012.

*Gertz,* however, left unresolved many questions on the issue of damages in defamation cases.

In *Gertz v. Robert Welch, Inc.,* the Supreme Court held the common law rule that harm to reputation from the publication of a libel was presumed to be incompatible with the First Amendment—at least in suits against the mass media and those who used the media—unless the plaintiff proves that the defamatory publication was made with knowledge of its falsity, or recklessly with regard to the truth or falsity of the statement. The purpose of this limitation was to prevent the giving of awards by the jury greatly in excess of what would be reasonable. So it would appear that there is now a constitutional limitation to the common law rule that harm to reputation can be presumed from the publication of a libel or slander per se.... The position has been taken in the Second Restatement of Torts that even if the

constitutional privilege does not extend to defamation made privately about private matters, the common law rule as to presumed damage by way of a presumption of impairment of reputation should be abrogated, except when there has been proof that the publication of the defamatory matter was made with knowledge of its falsity, or recklessly.

*Prosser and Keeton on Torts,* § 116A at 843 (5th ed. 1984) (footnotes omitted). More recently, however, the professors wrote:

The rule against presumed damages has now been modified in the special case in which two elements combine. If the plaintiff is a private person, that is, neither a public official nor a public figure, and if the publication has no public concern content, as in the case of an ordinary credit report, then presumed damages are now constitutionally permissible [without establishing constitutional malice].

*Id.* at 117–18 (1988 Supp.) (citing *Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985)).

In *Dunn & Bradstreet,* the Court, in a plurality opinion, held that the rule announced in *Gertz* is inapplicable to defamatory statements that do not involve matters of public concern. 472 U.S. at 757–61, 105 S.Ct. at 2944–46. Pertinent to the issue at bar, Justice White, in a concurring opinion wrote:

*New York Times Co. v. Sullivan* was the first major step in what proved to be a seemingly irreversible process of constitutionalizing the entire law of libel and slander. Under the rule announced in that case, a public official suing for libel could no longer make out his case by proving a false and damaging publication. He could not establish liability and recover any damages, whether presumed or actually proved, unless he proved "malice," which was defined as a knowing falsehood or a reckless

disregard for the truth. 376 US, at 280 [254], 11 L Ed 686, 84 S Ct 710, 95 ALR2d 1412 [1964]. *Given that proof, however, the usual damages were available, including presumed and punitive damages.*

*Id.* at 766, 105 S.Ct. at 2949 (emphasis added). Later, Justice White continued:

Although there was much talk in *Gertz* about liability without fault and the unfairness of presuming damages, all of this, as was the case in *New York Times,* was done in the name of the First Amendment, purportedly to shield the press and others writing about public affairs from possibly intimidating damages liability. But if protecting the press from intimidating damages liability that might lead to excessive timidity was the driving force behind *New York Times* and *Gertz,* it is evident that the Court engaged in severe overkill in both cases.

In *New York Times,* instead of escalating the plaintiff's burden of proof to an almost impossible level, we could have achieved our stated goal by limiting the recoverable damages to a level that would not unduly threaten the press. Punitive damages might have been scrutinized as Justice Harlan suggested in *Rosenbloom [v. Metromedia, Inc.],* [403 U.S. 29] at 77, 29 L Ed 2d 296, 91 S Ct 1811 [1971], or perhaps even entirely forbidden. *Presumed damages to reputation might have been prohibited, or limited, as in Gertz.* Had that course been taken and the common-law standard of liability been retained, the defamed public official, upon proving falsity, could at least have had a judgment to that effect. His reputation would then be vindicated; and to the extent possible, the misinformation circulated would have been countered. He might have also recovered a modest amount, enough perhaps to pay his litigation expenses. At the very least, the public official should not have been required to satisfy the actual malice standard where he sought no damages but only to clear his name. In this way, both First

Amendment and reputational interests would have been far better served.

*Id.* at 770–71, 105 S.Ct. at 2951–52 (emphasis added).

It is clear, therefore, that the Supreme Court has not recognized a constitutional prohibition on recovery of presumed damages by a public figure. Rather, the Court has imposed on these plaintiffs a prerequisite of proving that the defendant acted with "constitutional" or "actual malice." Once this burden has been met, the public figure may recover presumed (and punitive) damages.

The Supreme Court has not announced a constitutional standard of liability for defamation cases involving private defamation. In *Gertz,* the Court stated:

> We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.

418 U.S. at 347, 94 S.Ct. at 3010 (footnote omitted). More recently, in *Dunn & Bradstreet,* Justice Powell wrote for a plurality of the Court:

> In light of the reduced constitutional value of speech involving no matters of public concern, we hold that the state interest adequately supports awards of presumed and punitive damages—even absent a showing of "actual malice."

472 U.S. at 761, 105 S.Ct. 2946 (footnote omitted).[4]

In *Hearst Corp. v. Hughes,* 297 Md. 112, 466 A.2d 486 (1983), the Court of Appeals traced the evolution of federal

---

4. Maryland, however, may have adopted a more stringent test. In *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976), the Court of Appeals of Maryland held that "the rules announced in *Gertz* apply to cases of libel and slander alike brought against non-media." *Id.* at 594, 350 A.2d 688. Thus, in Maryland after *Jacron,* to recover presumed or punitive damages from a media or non-media defendant, even a "private plaintiff" must prove that the defendant acted with malice. To recover only actual damages, however, the *Jacron* court adopted a negligence standard of liability for cases involving purely

and Maryland defamation law in response to the question "whether, in a negligent defamation action, actual impairment of reputation must be proved in order to establish a right to recover compensatory damages, where emotional distress ... has been proved." *Id.* at 114, 466 A.2d 486. Responding in the negative, the court stated, "as a matter of Maryland law, the presumption of harm to reputation still arises from the publication of words actionable *per se.* A trier of fact is not constitutionally barred from awarding damages based on that presumption in a constitutional malice case. A trier of fact is constitutionally barred from awarding damages based on that presumption in a negligent defamation case." *Id.* at 125–26, 466 A.2d 486. *See also IBEW, Local 1805 v. Mayo,* 281 Md. 475, 379 A.2d 1223 (1977) (upholding under federal law award of $1.00 in compensatory damages and $5,000 punitive damages where actual malice standard was met and there was evidence of emotional distress, but no harm to reputation was shown). *See generally* Recent Decision, *"Hearst Corp. v. Hughes—* The Presumption of Injury to Reputation in Per Se Defamation Actions is not Dead,"* 44 Md.L.Rev. 688 (1985).

In the case at bar, the jury found the appellees liable under the public figure malice standard.[5] Therefore, on

---

private defamation. *Id.* at 596–97, 350 A.2d 688 (adopting § 580B of the *Restatement (Second) of Torts.*)

5. The trial court instructed the jury, in pertinent part, as follows:

The Court has ruled that Mr. Hanlon in this case was a, as we call it, a "public figure", not a public official, a public figure. That is, being president of the union in the context of the circumstances there at the Census Bureau where, if my memory serves me, there are some three thousand employees, although only four hundred or thereabouts were union members, but there was obvious exposure to this union political contest between certain members of the union to the entire census population, employee population, if I may call it that.

. . . . .

Therefore, the Court instructs you as a matter of law, that Mr. Hanlon, a public figure, has to plead and has to prove by clear and convincing evidence that the communication, Number 4, was one, false, and two, was defamatory; three, made with actual malice,

remand the jury may consider awarding actual, presumed, and punitive damages.

JUDGMENT AS TO DAMAGES REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL ON DAMAGES ONLY. APPELLEES TO PAY THE COSTS.

and four, defamatory either on its face or when considered in light of extrinsic facts are ... injurious to the plaintiff.

Malice exists when the person making the statement knowingly or deliberately lies or makes a statement with knowledge that it is false or without regard to a reckless disregard of its truth or falsity or when the person making the statement had an obvious reason to distrust either the accuracy of the statement or the source from which he learned of the statement, or when the statement is either so inherently improbable that only a reckless person would print it or is a product of the imagination of the person making it. It is not enough to show that the statement was untrue or defamatory if the person making the statement made a bona fide effort to investigate its truth or it is the kind of a statement that is commonly made by persons engaged in vehement debate or in political speeches or political campaigns.