600 A.2d 882

**Ronald R. HELINSKI**

v.

**Leon A. ROSENBERG.**

**No. 184, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Jan. 29, 1992.

Herbert Burgunder, Jr. (Horn & Bennett, P.A., on the brief), Baltimore, for appellant.

William F. Ryan, Jr. (Howard R. Feldman, Jeniphr Breckenridge and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellee.

Argued before ALPERT, WENNER and MOTZ, JJ.

ALPERT, Judge.

This defamation case stems from an earlier child custody proceeding in the Circuit Court for Baltimore County. At issue was whether Ronald Helinski sexually molested his daughter; Judge Leonard S. Jacobson initially concluded that he did not. One month later on August 20, 1985, the proceedings were reopened to permit the child's mother to introduce additional evidence. This evidence included the testimony of Dr. Leon Rosenberg, the defendant in this case. Rosenberg is an expert child psychologist whose testimony recounted the child's statement that her father hurt her in the genital area. The new evidence did not seem to persuade Judge Jacobson to change his initial conclusion that Helinski did not molest his daughter.

The news media was interested in the child custody case, and were on hand immediately after the August 20 proceeding. A local television station interviewed Rosenberg as he came out of the courthouse. During the interview, Rosenberg repeated what he had testified to in court:

The child talked very directly about being hurt by her father and she talked about being hurt by her father in the genital area.

When she finally talked about being hurt, she expressed real fear, real anxiety, and 2½ year old child cannot playact that well. It's beyond them.

Whatever did occur was frightening, but it looked like it was time limited and I think we have a very good chance of overcoming any negative effects.

That station's six o'clock news program broadcast Rosenberg's statements, and the eleven o'clock program repeated the segment containing his comment referring to the child's statement about being hurt in the genital area.

The present litigation ensued, with Helinski alleging that Rosenberg defamed him by uttering these statements. Before trial, Rosenberg filed a Motion for Summary Judgment. Judge John Carroll Byrnes of the Circuit Court for Baltimore City conducted a motions hearing, subsequent to

which he filed an Opinion and Order Granting Defendant's [Rosenberg's] Motion for Summary Judgment.

Judge Byrnes's Opinion characterized Rosenberg's press statements as follows:

He was not providing an opinion to the reporter since this was not requested. Nor was he presenting an 'idea' of his, something in the intellectual firmament for the public to chew on and pass around in the market place of ideas; but merely recounting what he had already said in a public, and privileged, forum. What he recounted was not false. It was true history even though it included, by implication ... his belief that what the child said was acceptable to him clinically as true.

Judge Byrnes found nothing in the evidence to suggest that Rosenberg acted with malice or had reason to know that his statements were false. Furthermore, according to Judge Byrnes, the trial court's conclusion that Helinski had not molested his child was insufficient to make Rosenberg's comments false. Addressing section 580B of the Restatement Second of Torts,[1] concerning defamation of private persons, Judge Byrnes concluded that Rosenberg could not be said to have spoken with reckless disregard for the truth. "The truth in this context is what he was told by his patient; and more to the point, what he recounted to the judge a few moments before in an open courtroom." Judge Byrnes also rejected the argument that Rosenberg was negligent in failing to ascertain the truth. "It is virtually stipulated in the case that what he said he said, he did

---

1. One who publishes a false and defamatory communication concerning a private person ... is subject to liability, if, but only if, he
   (a) Knows that the statement is false and that it defames the other,
   (b) Acts in reckless disregard of these matters, or
   (c) Acts negligently in failing to ascertain them.
Restatement 2d of Torts, § 580B. The Court of Appeals has adopted this section in cases of purely private defamation. *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 596, 350 A.2d 688 (1976).

say." [2]

Helinski also argued that Rosenberg's techniques and methodology were negligent, thereby causing him to reach an erroneous conclusion which he otherwise would not have reached and to which he would not have testified. Judge Byrnes concluded that Dr. Shapiro, Helinski's expert witness on this matter and a forensic psychologist, lacked the expertise in child sexual abuse necessary to address Rosenberg's possible negligence. He noted that a "contrary standard of care opinion would best come from someone who practiced in that particular specialty." He added that Dr. Shapiro really never said that Rosenberg was negligent in making the defamatory statements, and that any challenge to Rosenberg's professional capacity to testify should have been made during the proceeding before Judge Jacobson.

Helinski now appeals, arguing that Judge Byrnes erred by granting summary judgment in the face of a genuine dispute of material fact, and by ignoring evidence of Rosenberg's negligence.

As a preliminary matter, we note the standard for review of a trial court's grant of summary judgment:

Our cases make indelibly clear that at a hearing on a motion for summary judgment, the trial judge's role is not to decide the merits of the case but rather to determine whether any material facts are in dispute. Summary judgment should be granted only when the pre-trial documents demonstrate that no such dispute exists and that the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, an appellate court primarily should consider whether or not a

---

**2.** There is some disagreement, however, as to whether Rosenberg's statements were a response to questions from a reporter. Rosenberg said that they were, and Judge Byrnes thought so, but Helinski argues that nothing in the record demonstrates this, and the news segment transcript is similarly devoid of evidence.

factual issue exists, and in so doing should resolve all inferences against the party making the motion.

*McDermott v. Hughley,* 317 Md. 12, 22, 561 A.2d 1038 (1989); *see id.* (collecting cases).

## DEFAMATION

Maryland cases have stated clearly the elements of a prima facie case of defamation, and we need not repeat them here at any great length.

[T]o establish a case of defamation, the plaintiff must show (1) that the defendant made a defamatory communication—i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffers harm.

*Kairys v. Douglas Stereo,* 83 Md.App. 667, 678, 577 A.2d 386 (1990) (citations omitted).

### 1.

Rosenberg's statements, both in and out of court, were of the type that might damage Helinski's reputation. Considering the background upon which the words were uttered, it is reasonable to infer that Helinski was being accused of sexual child abuse. It matters not that Rosenberg was repeating both in and out of court the words of the alleged child abuse victim. "The common law of libel has long held that one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer." *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1298 (D.C.Cir.1988) (citations omitted). *See also Dameron v. Washington Magazine, Inc.,* 779 F.2d 736 (D.C.Cir.1985), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986), in which the court opined that "[t]he conditional immunity that applies to the publication of fair and accurate reports of official proceedings is an exception

to the common law rule that one who repeats or republishes a defamation uttered by another 'adopts' it as his own." *Id.* at 739 (magazine article reporting on safety at National Airport fell outside privilege's scope because it did not relate directly to governmental reports or proceedings). *Accord White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C.Cir.1990) (common law rule is that republisher is deemed to have adopted the underlying defamation as its own); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir.1991).

As a threshold matter, a trial court may determine whether the words spoken are reasonably susceptible of a defamatory meaning. Having so decided, the jury must decide whether they were actually defamatory. *See Embrey v. Holly*, 48 Md.App. 571, 429 A.2d 251 (1981), *rev'd in part, aff'd in part*, 293 Md. 128, 442 A.2d 966 (1982).

If the words convey defamatory meaning, a publication is slander or libel per se and presumed to injure a person's reputation. *See id.* 48 Md.App. at 579, 429 A.2d 251. At common law, statements imputing heinous crimes, *inter alia*, were slanderous per se. *Id.* at 579 n. 9, 429 A.2d 251. The sexual abuse of a small child meets the criteria for slander per se: it is the kind of allegation that would expose the person about whom it was spoken to widespread scorn, hatred, and contempt. Moreover, sexual child abuse is a crime. *See* Md.Ann.Code art. 27, § 35A (1957 & Supp. 1991).

2.

In order to be actionable, the allegedly defamatory statement must have been false. Helinski bears the burden of proving that Rosenberg's statements were false. *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 597, 350 A.2d 688 (1976). For the purpose of ruling on the motion for summary judgment, the trial judge should consider the fact that Judge Jacobson at one point in the custody proceeding clearly indicated that he believed that Helinski did not

molest his young daughter. Therefore, by way of inference, the daughter's statement was "false." Dr. Rosenberg repeated the false statement in court, and on the courthouse steps repeated that testimony and added a conclusion of his own.

### 3.

In *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 596, 350 A.2d 688 (1976), the Court of Appeals held that "a standard of negligence, as set forth in Restatement (Second) of Torts § 580B (Tent. Draft No. 21, 1975), which we here adopt, must be applied in cases of purely private defamation." *See also* 50 Am.Jur.2d *Libel and Slander* § 184 (1970) ("it is no defense that a defamatory imputation resulted from mistake [or] negligence"). If the custody case was a "purely private matter," then the negligence standard applies. *See* Restatement (Second) of Torts § 580B cmt. a (1977).

The motions judge rejected Dr. Shapiro's testimony, which, if accepted, would have established on a *prima facie* basis Rosenberg's negligence in repeating the defamatory remarks. Without that evidence, Helinski could not defeat Rosenberg's motion for summary judgment.

Helinski argues vociferously that Judge Byrnes applied the wrong standard of law in excluding Dr. Shapiro's expert testimony on the issue of Rosenberg's negligence. It appears that he is contending that the motions judge does not have the authority to decide the qualifications of an expert. We note that in order to pass muster at a summary judgment proceeding, the opponent must produce evidence that would be admissible at trial. *See Gooch v. Maryland Mechanical Sys., Inc.,* 81 Md.App. 376, 396, 567 A.2d 954 (1990) ("facts proffered in opposition to the granting of a motion for summary judgment must be admissible in evidence"). Thus, the standard for determining an expert's qualifications would be the same at a motions hearing as that at a trial.

The motions judge opined that Dr. Shapiro, who admittedly had no experience in the area of sexual child abuse, was not qualified to render an opinion on whether Dr. Rosenberg had adequately investigated the alleged child abuse. Dr. Shapiro is a psychologist licensed to practice in Maryland and in the District of Columbia. He has an advanced certificate in forensic psychology, for which he did five years of supervised post-doctoral work. His subspecialties include competency evaluations in criminal, professional liability and malpractice trials. Whether an expert is qualified to render an opinion is a matter to be determined by the court in its discretion and may only be disturbed on appeal where there is a clear showing of abuse of that discretion. *See Mondawmin Corp. v. Kres*, 258 Md. 307, 320, 266 A.2d 8 (1970) (judge has wide latitude in determining expert witness's qualifications); *Spence v. Wiles*, 255 Md. 98, 257 A.2d 164 (1969) (trial court's determination not reversible on appeal unless clearly erroneous or clear abuse of discretion).

Although the trial court's decision usually stands undisturbed on appeal, we must examine Dr. Shapiro's testimony to determine whether the trial court erred as a matter of law, or abused its broad discretion. Here we follow the analysis outlined by the Court of Appeals in *Radman v. Harold*, 279 Md. 167, 367 A.2d 472 (1977), a medical malpractice case in which the trial judge applied an erroneous legal standard in excluding a witness's testimony *Id.* at 168, 367 A.2d 472 (internal medicine specialist's lack of direct experience in gynecological surgery should not have prevented him, as a matter of law, from testifying as to the standard of care required of a surgeon performing gynecological surgery).

In *Radman,* the Court of Appeals reviewed the standards controlling the trial court's exercise of discretion in determining whether a witness qualifies as an expert, and noted that "a witness may be competent to express an expert opinion if he is reasonably familiar with the subject under investigation, regardless of whether this special knowledge

is based upon professional training, observation, actual experience, or any combination of these factors." *Id.* at 169, 367 A.2d 472. The court added that it "perceive[d] no reason why a person who has acquired sufficient knowledge in an area should be disqualified as a medical expert *merely* because he is not a specialist or *merely* because he has never personally performed a particular procedure." *Id.* at 171, 367 A.2d 472; *accord, id.* at 172, 367 A.2d 472 (collecting cases in other jurisdictions). *See also Ungar v. Handelsman,* 325 Md. 135, 146, 599 A.2d 1159 (1992).

Our reading of the record leads us to conclude that the ruling excluding Dr. Shapiro's testimony was premised on an error of law. Although Dr. Shapiro is not an expert in child abuse, he is a well-respected forensic psychologist.[3] Nevertheless, the court in its opinion ruled that Dr. Shapiro

> lacks the expertise in this context to permit the jury to conclude that Dr. Rosenberg was negligent.
>
> Now this is not to say that a forensic psychologist might, in certain circumstances, not testify in a similar proceeding. He might have testified, for example, in the very proceeding before Judge Jacobson as a possible expert witness on the custody/visitation issue before Judge Jacobson. But for the purpose of opining as to Dr. Rosenberg's negligence, I have reservations about Dr. Shapiro's lack of direct involvement as a specialist, by his own admission, in the area of child sexual abuse.
>
> I say this because I think it acceptable and conceded by all that this is a highly sensitive and specialized field of medicine; and that those who practice this field practice in the field for the purpose not of litigating issues, but of helping patients. The frame of reference is quite different; and the evaluation presented by Dr. Rosenberg to the Court, based upon the recounting of the child's experi-

---

3. Black's Law Dictionary defines forensic psychiatry as "[t]hat branch of medicine dealing with diseases and disorders of the mind in relation to legal principle and cases." Black's Law Dictionary 583 (5th ed. 1979).

ence was of such a peculiar nature, given the context of the proceeding before Judge Jacobson, that a contrary standard of care opinion would best come from someone who practices in that particular specialty. This obviously falls in a gray area, because on the one hand it's clear that Dr. Shapiro has an expertise which is highly important, credible and valuable in a particular litigation context and he may well have been provided useful testimony in that context for Judge Jacobson. But Dr. Shapiro's expertise was lacking in *this* context, to wit defamation, to convince a jury not that in fact the child may have been fabricating or may have deserved less credence, but rather that Dr. Rosenberg acted negligently in his preparation for his testimony. That is where I draw the distinction.

It is obvious that Judge Byrnes considered Dr. Shapiro's deposition in arriving at his ruling on the motion for summary judgment. Most of the questions propounded by appellee's trial counsel were based on a report that Dr. Shapiro sent to Richard H. James, Esquire, one of Helinski's trial attorneys. The report, deposition, and permissible inferences to be drawn therefrom, when viewed in a light most favorable to Helinski, *see Syme v. Marks Rentals, Inc.,* 70 Md.App. 235, 520 A.2d 1110 (1987), present evidence of Dr. Rosenberg's negligence. For example, in his report to Richard H. James, Esq., dated January 19, 1988, Dr. Shapiro stated:

As I indicated to you on the phone, since I do not do evaluations of child sexual abuse myself, I certainly do not regard myself as an expert in this field. What I will be commenting on, rather, is the field of forensic evaluation in general, and the necessary methodology that is attached to any assessment or evaluation performed when there is ongoing litigation.

There is, in general, a "standard of the profession" which indicates that in forensic evaluation, one must always supplement clinical evaluation with extensive history taking, corroboration of material from secondary

sources, review of records, police reports, legal documents, etc. My general critique is not that Dr. Rosenberg did an inadequate clinical evaluation of a child, but rather that the conclusions that he reached went far beyond the data available, and failed to take adequate account of the fact that there were many issues of litigation involved that should have alerted him to the necessity for a more comprehensive assessment.

In his deposition testimony, he added:

Q. Now, in this case, what is your opinion of the evaluation that Dr. Rosenberg did?

A. Well, again, I have to comment on this in a general way. From the point of view of a forensic assessment procedure, I find it very inadequate. I can't really comment on his clinical skills. I am sure that they're very good. And I'm sure he is very excellent in dealing with children. And so, you know, from the point of view—I'm going to assume, and this is based on my knowledge of Dr. Rosenberg in the past, that his clinical skills are excellent.

My only point was that in a situation like this, a clinical evaluation is not enough. You have to go beyond it. You have to get all these other sources of data.

■ Our review of the record and of the learned judge's reasons for excluding Dr. Shapiro's testimony convinces us that his ruling was incorrectly premised on his erroneous belief that Dr. Shapiro could not testify, as a matter of law, because he is a forensic psychologist and not a specialist in child abuse. Accordingly, we reverse and remand this case for new consideration of the motion for summary judgment. On rehearing, the court should make a new preliminary determination as to Dr. Shapiro's qualifications as an expert.[4]

---

4. If the trial court determines that Helinski was a public figure, then the "malice" standard applies. *See Capital–Gazette Newspapers v. Stack,* 293 Md. 528, 538, 445 A.2d 1038 (1982) (malice involves knowledge that statement was false, or with reckless disregard of

4.

■ Helinski also must establish that Rosenberg's statements damaged him. Harm to reputation is presumed in cases of defamation per se, and as we have noted elsewhere, "the plaintiff in such a defamation action could recover 'presumed' or 'general' damages." *Hanlon v. Davis*, 76 Md.App. 339, 351, 545 A.2d 72 (1988).

## PRIVILEGE

■ Assuming, arguendo, that Helinski establishes all other elements in his defamation claim, the availability of Rosenberg's affirmative defense of "privilege" under the circumstances herein, must be determined. There is no question that the privilege applying in judicial proceedings protects Rosenberg's in-court statements from an action in defamation. *See Korb v. Kowaleviocz*, 285 Md. 699, 702, 704, 402 A.2d 897 (1979) (reaffirming the Maryland rule making unconditional the privilege protecting witnesses in judicial proceedings). The Court of Appeals in *Adams v. Peck* articulated the policy reasons for the rule:

> The underlying rationale for according an absolute privilege to defamatory statements made in court by participants in judicial proceedings ... is that such a privilege is necessary to the proper administration of justice. The ultimate purpose of the judicial process is to determine the truth. The investigation, evaluation, presentation and determination of facts are inherent and essential parts of this process. If this process is to function effectively,

whether it was false); *see also Hanlon v. Davis*, 76 Md.App. 339, 545 A.2d 72 (1988) (no distinction in Maryland between media and non-media defendants with regard to application of constitutional malice standard); *Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597 (1966) ("it is for the trial judge in the first instance to determine whether the proofs show respondent to be a 'public official.'"); *Brewer v. Memphis Publishing Co.*, 626 F.2d 1238, 1247 (5th Cir.1980) ("It was for the trial judge, not the jury, to determine

those who participate must be able to do so without being hampered by the fear of private suits for defamation. *Adams*, 288 Md. 1, 5, 415 A.2d 292 (1980).

Rosenberg argues that his comments repeating his in-court testimony similarly are protected by the "fair reporting privilege" described in the Restatement of Torts.

> The publication of defamatory matter concerning another in a report of an official action or proceeding ... is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

Restatement (Second) of Torts § 611 (1976) (Report of Official Proceeding or Public Meeting).

The Restatement's comments illuminate the privilege's purpose.

> The basis of this privilege is the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings. The privilege is therefore one of general publication and is not limited to publication to any person or group of persons. For the same reason the privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false. Abuse of the privilege takes place, therefore, when the publisher does not give a fair and accurate report of the proceeding.

*Id.* cmt. a.

Although at first glance the rule appears to cover the instant case, and the appellee so urges, the comment addressing who may exercise the privilege may raise some doubt as to whether it applies here.

> The privilege stated in this Section is commonly exercised by newspapers, broadcasting stations and others who are in the business of reporting news to the public. It is not, however, limited to these publishers. It extends to any person who makes an oral, written or printed

---

whether the evidence showed that either plaintiff was a public figure").

report to pass on the information that is available to the general public.

*    *    *    *    *    *

> *A person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated.* This is true whether the original publication was privileged or not. Nor may he confer the privilege upon a third person, even a member of the communications media, by making the original statement under a collusive arrangement with that person for the purpose of conferring the privilege upon him.

*Id.* cmt. c. (illustration omitted) (emphasis supplied).

A strict reading of this portion of the comment could lead one to conclude that the fair reporting privilege may not apply to the person who made the original utterance or who adopts it. *See Liberty Lobby, Inc.,* 838 F.2d at 1298. Unfortunately, we find no case authority similar to the case at bar in which the person claiming the privilege was also the person who made the initial in-court statements.[5] We note, however, the case *Stover v. Journal Publishing Co.,* 731 P.2d 1335 (N.M.App.1985), *cert. denied* 484 U.S. 897, 108 S.Ct. 230, 98 L.Ed.2d 189 (1987) in which the court discussed but did not apply comment c. "The parties sharply disagree as to whether comment c, which purports to create a self-reported statement exception to the fair report privilege, was ever presented to or voted on by the American Law Institute (A.L.I.), publishers of the Restatement." *Id.* at 1339. The court noted, and we are inclined to agree, that the exception was intended to prevent the privilege's abuse.

> For example, a person might bring a suit or hold a public meeting not with the intention of pursuing the purported

---

**5.** Indeed, the case that Rosenberg cites to support his argument that the privilege protects him is not a case in which the utterer of the in-court statement was also the utterer of the out of court statement. *See McBee v. Fulton,* 47 Md. 403 (1878) (defendant was newspaper).

objective but to cause harm to another, by pleading or announcing defamatory matter and then using the protective shield of the fair report privilege to republish the defamatory matter to the world or to a targeted audience. *Stover,* 731 P.2d at 1339.

The Supreme Court of Arizona in *Greenacres Trust v. London,* 141 Ariz. 609, 688 P.2d 617, 626 (1984), observed that: "One exception to this wide application is the speaker who by design uses the privilege to republish defamation he previously made during the public proceeding."

There is nothing in the record, at this juncture, to indicate that Dr. Rosenberg's out-of-court statement was "not with the intent of pursuing the purported objective (reporting his courtroom testimony to the television reporter) but to cause harm to another." Thus, the so-called self-reported statement exception to the privilege does not appear to be applicable in light of the current record in the case *sub judice.*

In order to determine whether the privilege obtains, we look back to its laudable purpose:

Prior to the recognition of any constitutional privilege to defame, it was clearly recognized to be in the public interest that information be made available as to what takes place in certain kinds of judicial, legislative, and other public proceedings. Therefore, a qualified privilege of a special kind was recognized under which a newspaper or *anyone else* might make such a report to the public. The privilege rests upon the idea that any member of the public, if he were present, might see and hear for himself, so that the reporter is merely a substitute for the public eye—this, together with the obvious public interest in having public affairs made known to all.

W.L. Prosser and W.P. Keeton, *The Law of Torts* at 836 (5th ed. 1984) (emphasis added).

The reason behind the privilege was further explicated in *Ricci v. Venture Magazine, Inc.,* 574 F.Supp. 1563, 1567 (D.Mass.1983):

Media reports serve the public purpose of informing readers who wish to know what occurs in courts, but cannot make the personal sacrifices required to attend in person. Daily reports of events occurring during long trials are permissible, and even the report of a single day's proceedings commonly focuses on one or more events of special interest. Judicial proceedings often consist of long periods of unexciting evidence and colloquy, punctuated by occasional exchanges among participants in which depths of human emotion are exposed. Media reports may permissibly focus on the more dramatic occurrences, to the exclusion of the less interesting.

Undoubtedly, the privilege, if not abused, would be available to any courtroom observer who reports to the media what he saw and heard in the courtroom. Subject to the exception hereinbefore noted, there is no logical reason why the privilege should not be available to a testifying witness who repeats what he said while so testifying. To hold otherwise would produce the anomalous result where two witnesses to the same incident could be afforded quite different positions upon reporting trial testimony: if one does not testify but reports the testimony of the other, he enjoys the privilege, but if the testifying witness repeats what he said in court, he does not enjoy the privilege. The result is more than anomalous—it is absurd.

■ Accordingly, we hold that a qualified privilege is available to anyone who repeats, in the context of reporting, utterances made in a protected forum, provided, of course, that one, the report otherwise meets the requirements enumerated in the *Restatement*'s formula of the general rule, *i.e.*, the report is accurate and complete or a fair abridgement of the occurrence reported and, two, the self-reported statement exception is not applicable and the privilege is not otherwise abused.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.