ALBERT L. NISTICO *v.* THE MOSLER SAFE COMPANY
ET AL.

[No. 1360, September Term, 1978.]

*Decided September 10, 1979.*

The cause was argued before THOMPSON and WILNER, JJ., and JAMES S. GETTY, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Peter Parker* and *Harold T. Flanagan, Jr.,* for appellant.

*Pamela P. Wassmann,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Albert L. Nistico, appellant, filed a declaration in the Circuit

Court for Howard County against appellees Mosler Safe Company and its agent, Ronald Barnett, seeking damages for an alleged defamation. Appellees demurred to the declaration on the grounds that the statements attributed to them were not actionable, that no special damages were alleged, and that the suit was barred by a collective bargaining agreement to which Mosler and appellant's labor union are parties. The trial court sustained the demurrer on the last mentioned ground. Nistico contends that the demurrer should have been overruled. Appellees contend that the court was not only correct in sustaining the demurrer on the basis of the contract but also would have been correct in sustaining it on either of the other two grounds.

In ruling on a demurrer we must accept as true all well-pleaded facts in the declaration and any reasonable inferences which may be drawn therefrom. *Schwartz v. Merchants Mtge. Co.,* 272 Md. 305, 322 A.2d 544 (1974). Only those matters which appear on the face of the declaration and its supporting documents may be considered.[1] *Hall v. Barlow Corp.,* 255 Md. 28, 255 A.2d 873 (1969); *Edelstein v. Nationwide Mut. Ins. Co.,* 252 Md. 455, 250 A.2d 241 (1969). Applying these principles to the present case we assume the following set of facts, drawn from the allegations of the declaration and its accompanying documents, for the purpose of ruling on the demurrer:

The Mosler Safe Company was engaged in the business of installing, constructing, and servicing safes, bank vaults, safe deposit boxes, and other items of a similar nature. Nistico has been a member in good standing of Local #16, International Association of Bridge, Structural and Ornamental Iron Workers, A.F.L.-C.I.O., for eight years, and is now a specialist in the installation, construction, and service of the devices in which Mosler deals. For approximately three years prior to the time of the wrongs herein complained of, Nistico had been periodically employed in his area of expertise by Mosler.

---

1. Pursuant to Md. Rule 326, Mosler and Barnett demanded copies of the letter of January 31, and the collective bargaining agreement referred to in the declaration. After these were filed, they were treated under the rule as incorporated in the declaration.

364

On January 18, 1977, Nistico, as a member of the Collective Bargaining Committee of Local #16, visited a branch of Fidelity Federal Savings & Loan Association, and a branch of Baltimore Federal Savings & Loan Association, and propounded various questions to employees of these financial institutions concerning their safes, vaults, and similar equipment. Nistico did not at any such time identify himself as an employee of Mosler. The sole purpose of his visits was to establish whether or not non-union employees were being used by Mosler in contravention of its collective bargaining agreement with the union.

On January 31, 1977, Barnett, operating within the scope and course of his employment as Regional Installation Manager for Mosler, falsely and maliciously wrote and published the following words, knowing of their falsity or with reckless disregard as to whether they were true or false, to William Shaffer, Vice President of Local #16, and at least five other persons, concerning the aforementioned visits by plaintiff to the two Baltimore banks:

> "I do not know why Nistico went to these locations and posed as a Mosler Safe Company employee. I can only assume this was an individual act and had nothing to do with his membership in the Ironworker's Union or Local #16. The facts would appear that he was at these locations at the time reported by the eye witnesses and as shown in the photographs. It would also appear that he posed as a Mosler Safe Company employee and asked pointed questions about security equipment according to eye witness reports. It is my understanding that in accordance with accepted security procedures at Baltimore Federal and the Local FBI Office, photographs of this individual taken on January 18, 1977, have probably been distributed to financial institutions in the Baltimore area.

> "I have contacted our company Labor Relations and Personnel Department and have been advised by Mr. Hank Hinrichsen, Director of Personnel, to

inform you that under no circumstances will Al Nistico be used on Mosler Safe Company jobs again. When Mosler requests ironworkers from your local, he is not to be sent to our jobsites. If he is sent, he will not be used or paid in any manner, including show-up time. I'm sure you will agree that this is in the best interest of your Local, the International, Mosler, and our valued customers."

These statements were intended to convey and did convey, the meaning that Nistico had been guilty of unsavory or criminal conduct, "or deeds or actions of a shameful or disgraceful character." Although Nistico has been available for work ever since said publication, Mosler and various others have refused to employ him, and he has suffered loss of earnings and other income, as well as anxiety, vexation, and mental and emotional anguish.

On January 20, 1977, Barnett, again operating within the scope and course of his employment with Mosler, falsely and maliciously spoke and published by telephone essentially the same words as are set forth above. Appellant claimed $100,000 as damages in each of two counts.

The Court of Appeals recently summarized the elements which must be alleged in a defamation action in *Metromedia, Inc. v. Hillman*, 285 Md. 161, 400 A.2d 1117, 1123 (1979) as follows:

"Suffice it to say the effect in Maryland of *Gertz [v. Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)] and *Jacron [Sales Co., Inc. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976)] is that in order for a declaration alleging libel in a Maryland court to withstand the test of a demurrer it must allege:

(1) a false and defamatory communication
    a — which the maker knows is false and knows that it defames the other, or
    b — that the maker has acted in

reckless disregard of these matters, or

c — that the maker has acted negligently in failing to ascertain them, and

(2) that the statement was one which appears on its face to be defamatory, as, *e.g.*, a statement that one is a thief, or the explicit extrinsic facts and innuendo which make the statement defamatory, and

(3) allegations of damages with some particularity, since *Gertz* and *Jacron* forbid presumed damages.

In other words, as to (3) in Maryland a pleading to be sufficient must show a basis for believing that the plaintiff has sustained actual injury as defined in *Jacron.* As Judge Hammond noted in *Richardson, supra,* 207 Md. at 304, in some types of action injury was presumed from the violation of an absolute legal right while in others *actual* injury has to be shown to make a wrong actionable. In the words of the Court in *Garonzik v. Balto. Fed. S. & L. Ass'n,* 225 Md. 322, 323, 170 A.2d 219 (1961), a declaration must indicate more 'than extravagant and diffuse conclusions of the pleader.'

In sum, the only distinction remaining in Maryland between a libel per se and a libel per quod is that to recover the plaintiff must first show that the publication is defamatory. Where the words themselves impute the defamatory character, no innuendo — no allegation or proof of extrinsic facts — is necessary; but otherwise, it is. This is both a pleading rule and an evidentiary requirement. Where extrinsic facts must be shown in order to establish the defamatory character of the words sued upon, the omission to plead them makes the complaint demurrable for failure to state a cause of

action. Failure to prove them would justify a directed verdict."

The declaration before us alleges that the statements were made maliciously and with knowledge of their falsity or with reckless disregard for whether they were true or false. The sufficiency of this aspect of the declaration was not challenged by the demurrer and so we need not concern ourselves with it. A court will not consider any ground for a demurrer which has not been specifically raised. *Hall v. Barlow Corp., supra.* Therefore, the first portion of the test set out in *Metromedia, supra,* has been met.

As we read the alleged defamatory statement it is capable of supporting the inference that appellant was engaged in an illicit activity in visting the two Baltimore banks. While the statement does not explicitly assert that appellant was attempting some sort of illegal activity, a reasonable inference to that effect may be drawn from the words used. We conclude that the statement supports the innuendo ascribed to it in the declaration in that it implies appellant was untrustworthy and not a fit person to perform the type of work in which he specialized; that is, the installation of safes, bank vaults, safe deposit boxes, and other similar items. The statement in the present case is analogous to that under consideration in *Fennell v. G. A. C. Finance Corp. of Baltimore, No. 3,* 242 Md. 209, 218 A.2d 492 (1966). In that case, a letter to the plaintiff's employer stated that plaintiff was in default on a financial obligation and strongly implied that he could not be trusted to handle his employer's funds. The suggestion of wrongdoing and dishonesty in the present case is not as strong as that in *Fennell,* but it is sufficiently clear for us to conclude that the second prong of the *Metromedia* test has been satisfied.

Finally, it is apparent that appellant has alleged actual injury as the result of the defamation. He claims to have suffered injury to his reputation as a citizen and as an iron worker; the loss of employment by Mosler, as well as other employers; and anxiety, vexation, and mental and emotional anguish. All of these are elements of actual harm which ordinarily may be recovered in a defamation action. *See Gertz*

*v. Robert Welch, Inc., supra;*[2] *Jacron Sales Co., Inc. v. Sindorf,* 276 Md. at 587. We conclude that actual harm has been alleged in this case and the declaration meets the final prong of the *Metromedia* test.

The trial court held that although the declarations standing alone stated a cause of action, the action was barred by a collective bargaining agreement between the parties. The agreement was filed in answer to a request under Md. Rule 326 and, as we have said, must be considered a part of the declaration. It provides, in part, for the submission to arbitration of "[a]ny dispute as to the proper interpretation of this agreement," and spells out the process by which such disputes are to be resolved.

Appellant argues that this suit is based on defamation and that it is beyond the scope of the dispute settlement procedures outlined in the contract. Appellees, on the other hand, appear to argue that the action is, in essence, one to recover damages for the wrongful discharge from employment.[3] The characterization imposed upon the declaration by appellees is not entirely correct. The declaration claims damages not only for Mosler's refusal to employ appellant, but also for the refusal of others to employ him; for the injury to his general reputation; and for anxiety, vexation, and mental and emotional anguish.

---

2. "It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for
• actual injury. We need not define 'actual injury,' as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 U.S. at 349-50.

3. Appellee also argues that the action cannot be maintained because the alleged defamatory statement "given by Mosler to the union vice president was required or intended under the terms of the Agreement." This argument is based on the assumption that publication of the defamation was only to individuals with a legitimate interest in the information. The point raises the issue of qualified privilege and attendant fact questions. The declaration itself alleges that the communication was made to various persons but the pleadings do not reveal the offices held by all such persons. In any event, the point should be raised in a motion for summary judgment, or at trial, rather than on demurrer. *See* Pollitt v. Brush-Moore Newspapers, Inc., 214 Md. 570, 136 A.2d 573 (1957); Gallant v. Board of School Commissioners, 28 Md. App. 324, 345 A.2d 448 (1975).

The collective bargaining agreement between Mosler and appellant's labor union covered the employment relationship between the parties. Whether appellant was unjustly discharged is certainly a matter within its scope. It does not purport to cover any relationship between the parties outside that of employment and it does not purport to affect actions for civil wrongs committed by one party against the other which are related only incidentally, if at all, to the employment. *See Henthorn v. Western Md. Ry. Co.,* 226 Md. 499, 174 A.2d 175 (1961); *Kelly v. Exxon Corp.,* 35 Md. App. 272, 370 A.2d 162 (1977), *rev'd on other grounds,* 281 Md. 689, 381 A.2d 1146 (1978). Here, appellant has alleged damages, beyond lost wages, which were suffered as a result of defamatory statements. Such damages are alleged to have been caused by the defamation, not, as appellees argue, by the mere refusal of Mosler to employ appellant. Recovery of such damages is not a subject for arbitration under the collective bargaining agreement.

To the extent that appellant seeks to recover from Mosler lost wages due to the company's refusal to employ him, we think his exclusive remedy is under the terms of the contract. *Henthorn v. Western Md. Ry. Co., supra.* Such sums would be recoverable from the company only upon a theory of wrongful discharge. Logically, the company would not be liable on the basis of a defamation attributable to it for its own refusal to employ appellant.

Whether appellee Barnett may be held liable for appellant's lost wages is a different question. Barnett was not a party to any agreement and it appears from the full text of the letter which he wrote to the local's vice president that the decision not to use appellant on any future Mosler jobs was made by another company official after being "contacted" by Barnett. As one who allegedly published defamatory matter he would be liable for any damages caused thereby. Thus, if the allegations are proven that Barnett defamed appellant, without privilege, and that such wrong was the proximate cause of appellant's loss of employment, Barnett may be held liable for the injury.

A demurrer to an entire pleading must fail if, eliminating

any part thereof that may be defective, enough remains to present a sufficient ground for relief. *Smith v. Smith,* 216 Md. 141, 140 A.2d 58 (1958). As appellant has stated grounds for relief against both appellees the demurrer in this case should have been overruled.

> *Order sustaining demurrer reversed.*
> *Case remanded for further proceedings.*
> *Costs to abide final result.*