78 A.3d 934

David McCLURE, et al.

v.

William T. LOVELACE, Jr.

No. 1020, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Nov. 4, 2013.

718

Bruce R. Lerner & John M. West (Jeffrey R. Freund, Matthew S. Rubin, Bredhoff & Kaiser, PLLC, on the brief), Washington, D.C., for Appellant.

Paul F. Evelius, Jason R. Potter (Wright, Constable & Skeen, LLP, on the brief), Baltimore, MD, for Appellee.

Panel: MEREDITH, HOTTEN, JAMES P. SALMON (Retired, Specially Assigned), JJ.

HOTTEN, J.

Appellee, a union member, brought a defamation action against appellants, local union and its president, predicated on alleged disparaging statements made by the president. Following a jury trial in the Circuit Court for Baltimore City, a verdict was reached in favor of appellee and damages were awarded. Appellants noted a timely appeal and present six questions for our consideration:

1. Did the trial court err by holding as a matter of law that [appellee] was not required to exhaust all available internal union remedies before filing the Complaint?

2. Could the jury permissibly find, on the trial record, that [appellant] McClure acted with "actual malice"? [1]

3. Did the trial court err by instructing the jury to presume damages if it found that [appellant] McClure defamed [appellee] with actual malice?

4. Did the trial court err by permitting the jury to award damages based on allegedly defamatory publications which took place outside the statute of limitations?

5. Should a new trial be awarded based on *ex parte* communications between the trial judge's law clerk and [appellee]'s counsel which took place during the trial but were not disclosed on the record until after the jury's verdict?

6. Did the trial court err by awarding [appellee] economic damages?

For the reasons that follow, we shall affirm the judgment of the circuit court.

---

1. In their brief, appellants presented question 3 before question 2. We have rearranged them for clarification.

## FACTS AND PROCEDURAL HISTORY

In June 2007, appellant, David McClure ("Mr. McClure"), was elected President of Local 1300, Amalgamated Transit Union ("Union"). Appellee, William Lovelace, Jr., was re-elected to his third term as Financial Secretary in the same election. Initially, the work relationship between Mr. McClure and appellee was amicable. However, in early 2008, Mr. McClure became suspicious of appellee's financial practices. As a result, a series of disagreements ensued between the two regarding the management of the Union and its finances. Other Union executive board members were aware of the conflict, as several arguments between appellee and Mr. McClure occurred during monthly board meetings. On September 2, 2009, during an executive board meeting, at which the vice president of the International Union was present, a Union member attended the meeting to request assistance with a grievance. While addressing the board, the member stated that in April 2009, Mr. McClure said to him that appellee "has been caught red handed misappropriating funds and stealing money to finance his family personal vacations." Both parties ran for their respective positions on the 2010 executive board. By the time campaigning began for the election, Mr. McClure and appellee were "political enemies." Mr. McClure was reelected as Union president, but appellee lost.

On September 2, 2010, appellee filed a complaint in the Circuit Court for Baltimore City against appellants, Mr. McClure and the Union, alleging defamation. In his complaint, appellee pled that Mr. McClure made defamatory statements about him, alleging that appellee was stealing money from the Union.

Prior to trial, appellants filed a motion to dismiss, arguing that appellee did not exhaust the available internal Union remedies and that if he had, the alleged harm suffered may have been avoided. At a hearing on January 5, 2011, the trial court denied the motion. The court reasoned that because the internal Union procedures could not provide monetary dam-

ages as a remedy, they were inadequate; therefore, appellee was not required to exhaust them. Appellee filed an amended complaint on June 20, 2011, alleging that the defamatory statements occurred as far back as 2007, but that he first became aware of them in September 2009. In his complaint, appellee contended that his election defeat was a direct result of Mr. McClure's defamatory statements, resulting in injury to his reputation and financial losses. In their answers, both appellants pled the affirmative defenses of failure to exhaust internal Union remedies and statute of limitations.

At the summary judgment stage, both parties moved for judgment. Appellee was granted partial summary judgment on the question of whether appellee stole from the Union. In appellants' motions for summary judgment, they argued first, that the "actual malice" standard should have applied at trial and second, that the court should have barred any pre-September 2009 statements. The motions court denied the request to apply the actual malice standard, concluding that the trial judge should resolve the issue, but the request to bar the pre-September 2009 statements based on the statute of limitations, was granted. However, the court later granted appellee's motion for reconsideration, reasoning that appellants bore the burden to establish that the statements were barred.

At trial, the crux of appellee's case was that he lost the election because of unfounded rumors initiated by Mr. McClure. Appellee presented a number of witnesses who testified that Mr. McClure stated that appellee should not be reelected because he was stealing money from the Union. Appellants introduced evidence of instances when appellee incorrectly applied Union policy and improperly reimbursed executive board members for expenses. In one instance, appellee reimbursed executive board members for travel mileage to a Union convention, even though they were only passengers in a vehicle. Mr. McClure asserted that these practices led him to believe appellee was mismanaging funds. Appellants also introduced evidence that Mr. McClure requested the Union's financial books from appellee, but appel-

lee refused to provide them. The external auditor hired to perform the audit, testified that he also attempted to obtain the financial documents from appellee, but that appellee refused. Additionally, after the auditor and Mr. McClure entered appellee's office through the use of a locksmith, they observed shredded material on the ground and could not locate relevant records for the audit.

At the close of appellee's case, appellants moved for judgment on the grounds that appellee was aware of some of the alleged pre-September 2009 statements which should have been excluded on statute of limitations grounds. Appellants also argued that in applying the actual malice standard, appellee had not established liability. The trial court denied the motion. At the conclusion of all the evidence, appellants unsuccessfully renewed their motions for judgment predicated on the same basis and on the ground that there was insufficient evidence of economic loss.

The trial court instructed the jury that it had to find that Mr. McClure acted with actual malice to find him liable. The court also instructed the jury that if it found actual malice, it may presume damages. Appellants objected to the presumed damages instruction and to the jury being permitted to award damages for economic loss.

After the jury began its deliberations, the trial court's law clerk approached appellee's counsel regarding an employment application she intended to submit to his law firm. The law clerk inquired whether she should apply directly to the hiring partner or instead give her application to appellee's counsel. Appellee's counsel responded that he would submit the application for her. The next day, the law clerk emailed the hiring partner stating "[i]n the last week or so, I have had the pleasure of watching [appellee's counsel] try a defamation case before [the trial judge], for whom I serve as a judicial law clerk. [Counsel] have graciously agreed to hand-deliver to you my application materials." Later that day, appellee's counsel informed appellants' counsel regarding the conversation with the law clerk and that he was submitting her

application to his law firm. Soon after, the jury returned with a verdict in favor of the appellee, awarding him $200,000 for injury to reputation, $60,000 for financial loss, and $75,000 for mental anguish. The jury then resumed deliberations on the issue of punitive damages. During the deliberations, the law clerk entered the jury room on two occasions, once to deliver written punitive damages instructions and once to deliver a pot of coffee. The jury later announced its verdict of $90,000 in punitive damages.

Both appellants filed post-verdict motions for judgment notwithstanding the verdict, motions for a new trial and motions to amend the judgment. The grounds for the motions included the propriety of the interaction between the law clerk and appellee's counsel. The trial court denied the motions, reasoning that its law clerk's involvement in the case was "very limited."

Appellants noted a timely appeal. Appellee filed a motion to dismiss the Union's appeal for lack of standing. On October 2, 2012, this Court denied the motion.

Additional facts shall be provided, *infra*, to the extent they prove relevant in addressing the issues presented.

## STANDARD OF REVIEW

Under Md. Rule 2–322(b)(2), a defendant may seek dismissal of a complaint if the complaint fails "to state a claim upon which relief may be granted." "The appropriate standard of review of the grant or denial of a motion to dismiss is whether the well-pleaded allegations of fact contained in the complaint, taken as true, reveal any set of facts that would support the claim made." *Rivera v. Prince George's County Health Dept.*, 102 Md.App. 456, 649 A.2d 1212 (1994) (citing *Flaherty v. Weinberg*, 303 Md. 116, 135–36, 492 A.2d 618 (1985)).

■■■ "We review a trial judge's decision whether to give a jury instruction under the abuse of discretion standard." *See Thompson v. State*, 393 Md. 291, 311, 901 A.2d 208 (2006). "[T]o merit an instruction, the issue as to which the request is

made must have been generated by the evidence adduced." *State v. Martin,* 329 Md. 351, 357, 619 A.2d 992 (1993).

■■ A grant or denial of a motion for judgment or a motion for judgment notwithstanding the verdict is reviewed under the same standard. *Orwick v. Moldawer,* 150 Md.App. 528, 531, 822 A.2d 506 (2003) (citations omitted). We assume the truth of all credible evidence on the issue, and all fairly deducible inferences therefrom, in the light most favorable to the party against whom the motion is made. *Id.* Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration. *Id.* at 531–32, 822 A.2d 506.

## DISCUSSION

### A. Was Appellee Required to Exhaust All Available Internal Union Remedies?

■ Appellants assert that the trial court erred by failing to dismiss appellee's complaint, because appellee declined to pursue the internal Union procedures available, opting instead to file a complaint in court. Appellee responds that he was not required to pursue the internal procedures because they were procedurally and substantively inadequate.[2]

The Court of Appeals has recognized that generally, a union member must exhaust all available remedies before seeking relief from the judicial system. *Walsh v. Communications Workers of America,* 259 Md. 608, 271 A.2d 148 (1970). In *Walsh,* the defendant violated his union's constitution by working and earning money during a strike. *Id.* at 609, 271 A.2d 148. The union then initiated disciplinary proceedings against him. *Id.* The defendant did not respond to the disciplinary

---

2. Appellee also asserts that appellants waived the argument that appellant failed to exhaust the election challenge procedure by not asserting it below. We conclude that the issue is not waived. Appellant argued to both the trial court and this Court that appellee failed to exhaust. Furthermore, it is inconsequential which Union procedure appellee could have pursued because the remedies are both identical.

proceeding notification, attend the hearing, produce any witnesses or speak on his own behalf. *Id.* at 610, 271 A.2d 148. The hearing was held in his absence and a fine was imposed. *Id.* The defendant neither paid the fine, nor appealed the decision as was his right under the union constitution. *Id.* The union subsequently filed a lawsuit in court to enforce the fine and received a judgment in its favor. *Id.*

The defendant appealed, arguing that it was an unfair labor practice to impose a fine on a union member and that federal labor laws prevented the union from seeking enforcement in a state court. *Id.* The Court of Appeals noted that Maryland law requires that a member of an organization, including labor unions, exhaust available internal remedies before seeking relief from state courts. *Id.* at 612, 271 A.2d 148. The Court also considered that the defendant provided no evidence suggesting that the union appeal procedure was inadequate to protect his rights. *Id.* at 613, 271 A.2d 148. The Court affirmed the trial court's judgment.

Although Maryland requires exhaustion of internal union procedures before seeking judicial relief, this doctrine is not absolute. The United States ("U.S.") Supreme Court outlined the principles governing when exhaustion may be excused in *Clayton v. International Union*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). In *Clayton*, the plaintiff, a union member, was terminated for misbehavior from his position at a plant. *Id.* at 682, 101 S.Ct. 2088. He requested that his union file a grievance on his behalf challenging the termination. *Id.* The union initially pursued the grievance, but later withdrew from the process. *Id.* Instead of appealing the decision within the union, the plaintiff filed a lawsuit in federal district court alleging breach of the duty of fair representation. *Id.* at 683, 101 S.Ct. 2088. The plaintiff sought reinstatement from his employer and monetary damages from both the employer and the union. *Id.* The defendant moved to dismiss the complaint for failure to exhaust internal union appeals procedures. *Id.* The trial court dismissed the plaintiff's claim. *Id.* at 684, 101 S.Ct. 2088.

The plaintiff appealed to the U.S. Court of Appeals for the Ninth Circuit, which affirmed after deciding the union appeals process was adequate. *Id.* The Ninth Circuit ruled that because the plaintiff could have received money damages from the union, his failure to exhaust barred his lawsuit against the union. *Id.* However, it did not bar the plaintiff's suit against the employer because the union appeals would not have resulted in his reinstatement. *Id.* The plaintiff requested certiorari and the U.S. Supreme Court granted it. *Id.* at 685, 101 S.Ct. 2088.

The Supreme Court held that exhaustion of remedies was not required because the union's procedures could not have provided the complete relief sought. *Id.* at 691, 101 S.Ct. 2088. The Court was opposed to establishing a "universal exhaustion requirement[ ] lest employees with meritorious[ ] claims be forced to exhaust themselves and their resources by submitting their claims to potentially lengthy internal union procedures that may not be adequate to redress their underlying grievances." *Id.* at 689, 101 S.Ct. 2088. There are three factors that trial courts should consider when determining whether a party must exhaust:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; *second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks* [ ]; and third, whether exhaustion of the internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of the factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Id.* (emphasis added). Under the second factor, the internal union appeal was inadequate, as it would not have resulted in his reinstatement or in the complete monetary relief which the plaintiff sought. *Id.* at 690, 101 S.Ct. 2088.

> "[ ] [W]here an aggrieved employee cannot obtain either the substantive relief he seeks or reactivation of his grievance,

national labor policy would not be served by requiring exhaustion of internal remedies. In such cases, exhaustion would be a useless gesture: it would delay judicial consideration of the employee's [ ] action, but would not eliminate it."

*Id.* at 693, 101 S.Ct. 2088.

It is the second *Clayton* factor which is relevant to the case at bar. There are no Maryland cases which address the adequacy of an internal union procedure that does not afford monetary damages. While this issue is one of first impression in Maryland, several jurisdictions have decided similar issues. Federal courts applying Maryland law have considered cases when a union member files suit without exhausting internal union procedures. *See Prevas v. Hopkins,* 905 F.Supp. 271 (D.Md.1995); *Wiglesworth v. Teamsters Local Union No. 592,* 552 F.2d 1027 (4th Cir.1976). However, none have considered the relationship between adequacy of remedies and the absence of the option of monetary damages as a remedy.

In *Prevas,* the plaintiff sued both his union and an investigation service, alleging they were negligent and had conspired to invade his privacy. 905 F.Supp. at 273. The union-defendant filed a motion to dismiss for failure to exhaust internal union remedies. *Id.* at 274. The plaintiff argued that exhaustion would have been futile because he would not receive a fair hearing and the union procedures could not afford him a satisfactory remedy.[3] *Id.* at 276. The court granted the defendant's motion and dismissed the plaintiff's "speculative and unsupported" assertions. *Id.*

At oral argument, appellants contended that the case law does not indicate "that failure to get money makes a remedy inadequate." To the contrary, several jurisdictions have held that under *Clayton,* if a plaintiff seeks monetary damages, a union's remedies are considered adequate if they allow for monetary damages.

---

3. The opinion does not reference what remedy the plaintiff was seeking. Furthermore, there is no indication whether the union procedures could award monetary damages.

In *Murad v. Wayne State Regents*, 239 Mich.App. 538, 609 N.W.2d 588 (2000), the Michigan Court of Appeals reversed a trial court's ruling and held that a union member was required to exhaust internal union remedies before pursuing a case in state court. The plaintiff made a number of charges all concerning his termination. *Id.* at 539, 609 N.W.2d 588. The trial court excused the plaintiff's failure to exhaust internal union appeals because the union remedies would not reinstate the plaintiff and may not have provided monetary damages. *Id.* at 540, 609 N.W.2d 588. The defendants appealed. *Id.* The Michigan Court of Appeals found that the trial court erred because under *Clayton*, the remedies were adequate since the union's constitution allowed for an award of monetary damages if an employee is reinstated. *Id.* at 545–46, 609 N.W.2d 588. As a result, it concluded that the union provided adequate relief, therefore, the plaintiff was required to exhaust. *Id.*

Likewise, in *Bredesen v. Detroit Federation of Musicians*, 165 F.Supp.2d 647 (2001), the federal District Court of Michigan found that because a union member could recover monetary damages from the union, the internal procedures were adequate and she was required to exhaust them. Upon learning that her male counterparts were being paid at double her rate, the plaintiff sought assistance from her union to increase her pay. *Id.* at 650. After the union refused, the plaintiff initiated a lawsuit alleging breach of the duty of fair representation and sex discrimination. *Id.* at 651. The defendant moved for summary judgment, arguing that the plaintiff's claim should be dismissed for failure to exhaust internal union remedies. *Id.* at 652. Upon review of the union's remedies, it was evident that the union could award money damages for lost compensation plus interest. *Id.* at 662. Accordingly, the court reasoned that the second factor of the *Clayton* test was not satisfied and the plaintiff was required to exhaust. *Id.*

Several federal circuit courts have likewise found that an internal union remedy is inadequate when a plaintiff seeks monetary damages that cannot be awarded by the union. *See Maddalone v. Local 17, United Brotherhood of Carpenters*,

152 F.3d 178 (2nd Cir.1998) (finding exhaustion not required when union failed to provide evidence to establish that it could award monetary damages as sought by a plaintiff); *see also Beyene v. Coleman Security Services*, 854 F.2d 1179 (9th Cir.1988) (refusing to require exhaustion when the plaintiff sought money damages but the union constitution did not allow for a monetary award). *But cf. Tinsley v. United Parcel Service Inc.*, 665 F.2d 778 (7th Cir.1981) (ruling that a union member who sought monetary remedies in federal district court must first exhaust union remedies when the union can award monetary damages); *Rogers v. Board of Educ. of Buena Vista Schools*, 2 F.3d 163 (6th Cir.1993) (holding that when a plaintiff sues for both reinstatement and money damages, if union procedures can award money damages, the remedy is adequate and thus requires exhaustion).

Most recently in *Chapman v. United Auto Workers Local 1005*, 670 F.3d 677 (6th Cir.2012), the plaintiff alleged that his union failed to pursue a grievance on his behalf after he was terminated by his employer. After speaking with a union committee member regarding filing a grievance, the plaintiff was orally assured the committee member would pursue the matter. *Id.* at 678. The plaintiff later learned that a grievance was never initiated and brought suit in federal district court. *Id.* The district court granted the union's motion for summary judgment and dismissed the case for failure to exhaust the remedies available to him under the union constitution. *Id.* at 680.

On appeal, the Sixth Circuit applied *Clayton* and concluded that the plaintiff provided no evidence to establish that the hostility or judicial delay exceptions applied. *Id.* at 685. It did conclude however, that the union offered evidence concerning the adequacy of its remedies. *Id.* The union's constitution authorized it to award monetary damages, back pay or both as a result of a successful grievance. *Id.* Therefore, the plaintiff could have received an adequate remedy from the union and was required to exhaust the union appeal process before seeking judicial relief. *Id.*

Appellants rely on *McPhetridge v. IBEW, Local Union No. 53*, 578 F.3d 886 (8th Cir.2009) to support their contention that exhaustion is required because appellee could have avoided the damages he sought at trial by utilizing union procedures. In *McPhetridge*, the union notified the plaintiffs that they were in violation of a rule prohibiting employment at non-union approved businesses and that there would be a hearing where each could present a defense to the allegations. *Id.* at 888. The plaintiffs did not attend the hearing; therefore the union upheld the charges and fined each $5,000. *Id.* The union informed the plaintiffs of their right to appeal, but the plaintiffs did not. *Id.* Instead, they filed suit in federal district court alleging that the union denied them due process and violated their free speech rights. *Id.* at 889. The district court dismissed the claims on motion for summary judgment because the plaintiffs failed to pursue internal union remedies. *Id.*

On appeal, the plaintiffs asserted that their failure to exhaust was excusable because the union procedures could not award them the compensatory and punitive damages that they sought. *Id.* at 890. The Eighth Circuit disagreed, deducing that if they had attended the initial hearing or appealed the result, the union could have dismissed the charges and the fine, thereby eliminating the need to resign and lose wages (for which they sought compensatory damages). *Id.* at 891. Accordingly, the plaintiffs' exhaustion was not excused and the dismissal was upheld. *Id.* at 892.

Appellants also cite *Fuller v. Local Union No. 106 of United Brotherhood*, 567 N.W.2d 419 (1997). In *Fuller*, the plaintiff brought suit against his union, his opponent in a union board election and two other union members. *Id.* at 421. He alleged that after a union social event where he consumed beer, the two union members falsely reported to the opponent that the plaintiff was weaving while driving home. *Id.* The opponent then called the city police, claiming that the plaintiff was driving under the influence. *Id.* The police detained the plaintiff during a traffic stop, but released him once they determined he was not intoxicated. *Id.* The plaintiff brought

union charges against the opponent for slander but the union board dismissed the charges. *Id.* Thereafter, the plaintiff sued asserting two counts. *Id.* First, against the opponent and the union, he alleged malicious prosecution, abuse of process and intentional infliction of emotional distress. *Id.* Second, against the union, he alleged breach of contract, claiming that after he brought union charges for slander, the union ceased making work referrals on his behalf in violation of his union contract. *Id.* The trial court granted the defendant's motion for summary judgment on both counts, reasoning specifically regarding the breach of contract claim that the plaintiff did not exhaust the internal union remedies. *Id.*

The plaintiff appealed, arguing that the trial court erred in dismissing his breach of contract claim because the union's constitution did not provide him a meaningful remedy, since it could not grant monetary damages. *Id.* at 423. The Iowa Supreme Court recited Iowa law which excuses exhaustion when property rights are involved and union remedies would be futile, illusory, or vain. *Id.* The court held that the exceptions to exhaustion did not apply to the plaintiff's case because it was not a disagreement over collective bargaining and because there was an explicit clause in the union constitution requiring exhaustion. *Id.* It concluded that an appeal through the national union procedures may have resolved the plaintiff's claims of bias at the local level. *Id.* at 424.

In the instant case, it is undisputed that there were at least two Union disciplinary procedures available to appellee: a challenge and a chargeable offense. Appellants aver that if appellee believed that the election results were attributable to misconduct, he could have filed a challenge.

> **Challenges.** Any member who is entitled to vote may challenge the conduct or results of an election by filing, within ten (10) days of the counting of the ballots, a challenge to the incumbent S[ecretary] T[reasurer] of his or her L[ocal] U[nion] to such effect. The S[ecretary] T[reasurer] shall submit the challenge for decision to the executive board, subject to final ruling by the membership.

Amalgamated Transit Union Constitution and General Laws § 14.8. Additionally, appellants assert that appellee could have brought charges against Mr. McClure for defamation. At least one individual testified at trial that making false statements about another executive board member was conduct that could result in charges being pursued.[4]

> **Chargeable Offenses.** Any officer or member may be charged with specific activities involving: a violation of any specific provision of the Constitution and General Laws or the bylaws of the member's L[ocal] U[nion]; gross disloyalty or conduct unbecoming of a member; malfeasance or non feasance in office; financial malpractice; corrupt or unethical practices or racketeering; dual unionism, decertification or secession; or a violation of duly established and applicable rules, regulations, policies or practices of a [Local Union] . . .

Amalgamated Transit Union Constitution and General Laws § 22.1. In response, appellee points to the inadequacy of these procedures as excusing any required exhaustion.

Following the hearing on appellants' motion to dismiss, the trial court denied the motion because appellee was seeking monetary damages and the Union constitution did not provide for a monetary damage award. The trial court determined that even if appellee was instructed to pursue the Union

---

4. [APPELLEE'S COUNSEL]: And based on [your] tenure and your tenure as a Union member, have you become familiar with the phrase "conduct unbecoming of a member?"
[WITNESS]: Yes Sir.
[APPELLEE'S COUNSEL]: Okay, and based on your understanding of that phrase, what types of conduct could it include?
[WITNESS]: Um, saying anything, going out and saying anything negative against the Union or stealing or defacing the Union. Basically anything that's negative against the Union, you know, and it can go on and on, you know, but that's just a couple of them.
[APPELLEE'S COUNSEL]: Well would falsely accusing, based on your understanding of that phrase, conduct unbecoming a member, would a Union officer falsely—
[APPELLANT'S COUNSEL]: Objection
[APPELLEE'S COUNSEL]:—accusing another Union officer of stealing money from the Union be conduct unbecoming a member.
[WITNESS]: Yes, that would be conduct unbecoming of a member.

**734**

appeal process, he would later return to court seeking monetary damages. Appellants never contested appellee's contention that the Union was unable to provide monetary damages. The Union's constitution provides that:

> The [General Executive Board]'s power to deal with members found guilty of violations of this section shall include the power to suspend, expel, fine, declare ineligible for holding office or otherwise discipline such members.

Amalgamated Transit Union Constitution and General Laws § 12.5.

As the trial court correctly indicated, none of the Union remedies would allow appellee to recover money for any harm established. The remedies could have resulted in the assessment of a fine or the suspension of Mr. McClure, but neither were sought by appellee.

As the federal circuit courts have concluded on many occasions, pursuant to *Clayton*, a union remedy may be inadequate if a plaintiff seeks monetary damages and the union cannot provide them. Before the trial court and here on appeal, appellants rely on *Prevas* and *Fuller;* however, these cases are distinguishable. The thrust of the argument in *Prevas* was that exhaustion was futile because the plaintiff would not receive a fair hearing. Importantly, there was no indication that the plaintiff sought monetary damages or that the union could not provide them. In contrast, in the instant case, the main contention is that appellee sought monetary damages, but the Union constitution did not provide that as a possible remedy. Likewise, in *Fuller,* while the court did conclude that the plaintiff had to exhaust the internal union remedies before bringing his breach of contract suit, its reasoning did not address the adequacy of the remedies. The court predicated its holding on two reasons: the fact that the dispute was not a collective bargaining dispute and that the union constitution expressly required exhaustion.[5] What was not included in

---

5. Notably, in the instant case, the Union's constitution also requires exhaustion, but that is not an argument that was advanced at the trial level or here on appeal.

the court's reasoning was any discussion regarding whether the remedies available were monetary or adequate. For the above reasons, *Fuller* and *Prevas* provide little guidance in answering the question before us.

*McPhetridge* is also distinguishable. In that case, the Eighth Circuit found that the plaintiffs did have to exhaust because availing themselves of the union remedies could have resulted in avoiding the monetary harm alleged at trial—the imposition of a fine. It was possible that the national union could have dismissed the fines if the plaintiffs had appealed and made the same arguments to the Union that they made to the court. To the contrary, here, appellee was never assessed a fine. If he had pursued the union remedies, he would not have avoided the harm he suffered—being defamed by Mr. McClure, losing re-election as Financial Secretary and suffering lost wages. The trial court was not persuaded by appellants' argument that exhaustion could have remedied the alleged harm and neither are we.

Appellee sued in court seeking monetary damages for the harm he suffered as a result of Mr. McClure's defamatory statements. If he had pursued charges through the Union, under its constitution, the only remedies available were the imposition of a punishment and sanctions against Mr. McClure. Appellee sought monetary recovery, a relief that was not available to him through the Union process. As appellants even conceded during oral argument, had appellee exhausted all internal Union remedies, regardless of whether he was successful, he likely would have ended up in court.

Therefore, we conclude that the trial court properly exercised its discretion by excusing appellee's failure to exhaust and affirm the trial court's denial of the motion to dismiss.

## B. Could the Jury Find that Mr. McClure Acted with Actual Constitutional Malice?

■ The trial court instructed the jury that appellee was a public figure as a matter of law and therefore, it could only

find that appellee was defamed if the statements were made with actual malice.

■   On review of a determination of actual malice, a constitutional standard, we perform our "own independent examination of the whole record." *Batson v. Shiflett*, 325 Md. 684, 602 A.2d 1191 (1992) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (explaining that because actual malice concerns First Amendment protections, courts must independently decide whether the trial evidence is sufficiently supported by clear and convincing proof)).

In the landmark case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) [hereinafter *New York Times* ], the U.S. Supreme Court established the standard for public figures regarding defamation actions. There, an Alabama commissioner filed a complaint against the New York Times Company, arguing that the newspaper made libelous statements about him in his official capacity. *Id.* at 256, 84 S.Ct. 710. Regarding the standard of fault, the Court concluded that a public official could only recover damages if he or she established that the statement concerning his or her official conduct was made with "actual malice," defined as "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. 710.

In *Batson*, the plaintiff was a local union president who sued his national union and the national union's president for defamation and intentional infliction of emotional distress. *Batson*, 325 Md. at 696, 602 A.2d 1191. The parties became engaged in a labor dispute over claims that the plaintiff entered into an unauthorized collective bargaining agreement. *Id.* at 693, 602 A.2d 1191. During the dispute, the plaintiff and the defendant both distributed literature attacking the other. *Id.* at 694, 602 A.2d 1191. One of the pieces of literature alleged that the plaintiff was involved in the misappropriation of union funds. *Id.* at 695, 602 A.2d 1191. The defendant also verbally repeated this allegation at several union meetings. *Id.* The plaintiff sued and a jury rendered a

verdict in his favor, awarding him compensatory and punitive damages. *Id.* at 698, 602 A.2d 1191.

The defendants appealed and this Court affirmed the judgment of the trial court. *Id.* The Court of Appeals granted *certiorari* and considered, among other issues, whether there was clear and convincing evidence to establish that the statements were made with actual constitutional malice. *Id.* at 692, 602 A.2d 1191. The Court of Appeals noted that the actual malice test is a subjective test predicated on the defendant's intent. *Id.* at 728–30, 602 A.2d 1191. The Court continued, explaining that absent the rare situation when actual constitutional malice can be established as a result of words from the defendant, a jury must rely entirely on circumstantial evidence. *Id.* at 730, 602 A.2d 1191.

> [A]ctual malice [may be inferred] from objective facts.... These facts should provide evidence of negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice.

*Id.* (quoting *Bose Corp.*, 692 F.2d at 196). The Court continued, noting that the plaintiff had the burden of proving actual constitutional malice by clear and convincing evidence. *Id.* at 731, 602 A.2d 1191. The jury was presented with evidence regarding the defendant's motive and his intent to remove the plaintiff from office. *Id.* There was evidence of prior disagreements between the parties, of allegations of fund misuse, and of statements made to other union members that the plaintiff was guilty of theft, although the defendant was aware that there were no charges. *Id.* The Court concluded that based on the circumstantial evidence, the jury could have inferred that the statements were made with knowledge they were false or with reckless disregard for the truth. *Id.*

In the instant case, Mr. McClure denied making the statements at all, much less with actual constitutional malice. Therefore, it was necessary for the jury to rely on circumstantial evidence. At trial, Mr. McClure stated that he had no proof that appellee was stealing from the Union and that he

would never suspect an individual of stealing unless he had proof. However, throughout the trial, appellee produced at least fifteen witnesses who testified that they had heard Mr. McClure make statements that appellee was stealing from the Union. There was also testimony that Mr. McClure stated to Union members that appellee was stealing and that he would establish the theft at a later date. The jury, considering this evidence, could have concluded that Mr. McClure knew that such statements were false and expressed the statements with reckless disregard for their veracity. Appellee also introduced evidence revealing Mr. McClure's motive for making defamatory statements. According to witness testimony, Mr. McClure believed that appellee attempted to instruct him on how the Union should be managed. This was frequently the reason for their many disagreements. Akin to *Batson,* where the defendant's motive to remove the plaintiff from office was due to a series of disagreements, here there was evidence that Mr. McClure desired to remove appellee from the executive board so that he could manage the Union in a manner he deemed appropriate.

As noted above, appellants contend that the statements were never made, and in the alternative that even if they were, they were made because appellee aroused Mr. McClure's suspicions with his questionable financial practices. For example, on one occasion appellee drove to a Union conference, instead of flying, and requested reimbursement for his driving costs even though flying was cheaper. Appellee also allegedly improperly awarded travel reimbursements to individuals who were not entitled to them. While some of appellee's actions may have been improper (according to letters from the national Union stating so), they did not constitute stealing and would not justify Mr. McClure advising others that appellee was stealing.

Based on the evidence produced at trial, there was clear and convincing proof that Mr. McClure had improper motives and that he made the defamatory statements with knowledge they were false or with reckless disregard for their truth. We conclude that the evidence was sufficient for a finding of actual

constitutional malice. We now turn to appellants' contention that even with a finding of actual constitutional malice, damages may not be presumed.

## C. Did the Trial Court Err by Instructing the Jury That If It Found Actual Constitutional Malice It Could Presume Damages?

■ At the conclusion of the evidence, the trial court instructed the jury:

> When a person is the subject of a defamatory statement that was made with actual malice there is a presumption that the statement causes that person harm and relief may be awarded even in the absence of any evidence that—of actual damages.

Appellants assert that this instruction was improper because even if actual constitutional malice was found, the jury could not presume damages.

As previously indicated, *New York Times* established that a plaintiff must prove actual constitutional malice in order to recover presumed damages. 376 U.S. at 280, 84 S.Ct. 710. Later in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court reaffirmed this rule, holding that "[s]tates may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."

Maryland Courts have adopted this doctrine. *See Jacron Sales Co., Inc. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976) (applying *Gertz* to defamation and prohibiting presumed damages unless the plaintiff meets the *New York Times* standard of actual constitutional malice). In *Hanlon v. Davis,* 76 Md.App. 339, 545 A.2d 72 (1988), this Court applied the doctrine in a case similar to the case *sub judice.* The plaintiff was campaigning for president of his union. *Id.* at 341–43, 545 A.2d 72. During the campaign, the defendants published a libelous letter, posting it on bulletin boards where other union members would see it. *Id.* at 342, 545 A.2d 72. The trial

court instructed the jury that the plaintiff was a public figure as a matter of law and instructed the jury on actual constitutional malice. *Id.* The plaintiff requested the presumed damages instruction, but the trial court denied the request. *Id.* at 343, 545 A.2d 72. Although the jury found in favor of the plaintiff, he was only awarded nominal damages. *Id.* at 341, 545 A.2d 72.

The plaintiff appealed, arguing that the trial court erred by refusing to provide the presumed damages instruction. *Id.* at 343, 545 A.2d 72. This Court concluded that:

> [W]hether a public or private figure, appellant was entitled to an instruction on presumed damages because he proved that the defamatory publication was made with knowledge of its falsity or with reckless disregard of the truth (constitutional malice), *i.e.*, a person whether a public or private figure, may recover presumed and punitive damages when he proves "constitutional malice."

*Id.* at 350–51, 545 A.2d 72. Relying on *Gertz*, we held that a public figure may recover presumed damages when constitutional malice is shown. *Id.* at 355, 545 A.2d 72. The case was remanded with instructions that the jury consider awarding actual, presumed and punitive damages. *Id.* at 357, 545 A.2d 72.

This Court has approved presumed damages awards on numerous occasions. *See Samuels v. Tschechtelin*, 135 Md. App. 483, 549–50, 763 A.2d 209 (2000) (holding that "damages are presumed when a plaintiff can demonstrate actual constitutional malice, by clear and convincing evidence, even in the absence of proof of harm"); *Shapiro v. Massengill*, 105 Md. App. 743, 774, 661 A.2d 202 (1995) ("awarding damages based on [the presumption of harm to reputation] in a constitutional malice case" is permissible); *Laws v. Thompson*, 78 Md.App. 665, 685, 554 A.2d 1264 (1989) (citing *Hanlon* and *Gertz* reaffirming that when a plaintiff can establish actual constitutional malice he is entitled to a presumption of damages). Likewise, the Court of Appeals has acknowledged that proof of actual malice can result in an award of presumed damages.

*Hearst Corp. v. Hughes,* 297 Md. 112, 466 A.2d 486 (1983) (holding that Maryland law does not prohibit awarding damages when a presumption of harm arises in a constitutional malice case).

Here, the trial court instructed the jury that appellee was a public figure, an instruction which was approved by appellants. Based on the evidence adduced at trial, the jury concluded that Mr. McClure had defamed appellee with actual constitutional malice. The trial court properly instructed the jury regarding presumed damages over the objection of appellants. As we established in *Hanlon,* since appellee was a public figure, if the jury found actual constitutional malice it could award presumed damages. Consequently, following its finding of actual constitutional malice, the jury awarded presumed damages.

Accordingly, we conclude that the trial court did not abuse its discretion by instructing the jury that it could presume damages upon a finding of actual constitutional malice.

### D. Could Jury Consider Statements Made Outside the Statute of Limitations?

■ At the close of appellee's case and at the conclusion of trial, both appellants moved for judgment, arguing in part that the trial court should have excluded any alleged pre-September 2009 statements. The trial court denied their respective motions. On appeal, appellants claim that the trial court erred when it permitted the jury to consider the statements because they occurred outside of the statute of limitations. Appellee responds that under the discovery rule, the statements were admissible because appellee had no knowledge of them until September 2009.

■ In Maryland, the statute of limitations for defamation is one year from the date of accrual. Md.Code Courts and Judicial Proceedings § 5–105. Accrual occurs either the day of publication, or, under the discovery rule, "when the [plaintiff] in fact knew or reasonably should have known" of the statement. *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d

677 (1981). Maryland recognized that the discovery rule applies to defamation cases in *Sears, Roebuck and Co. v. Ulman,* 287 Md. 397, 412 A.2d 1240 (1980). There, the plaintiff applied for credit with J.C. Penney stores in 1978 and was denied. *Id.* at 399, 412 A.2d 1240. He learned that he was denied because nearly three years before, in 1975, the defendant had falsely reported that his account with it was delinquent. *Id.* The plaintiff sued in 1979, within one year of the day he learned of the false credit report, alleging libel and negligence. *Id.* The defendant filed a motion to dismiss claiming that the defamation count was barred by the statute of limitations because the libel occurred more than three years before he filed the lawsuit was initiated. *Id.* The trial court denied the motion. *Id.*

On appeal, the Court of Appeals affirmed the ruling of the trial court. *Id.* at 403, 412 A.2d 1240. It reasoned that until the plaintiff was denied credit, he did not know or have reason to know of the libelous report. *Id.* The Court found that the plaintiff was not to blame for his ignorance and therefore, the statute began running upon knowledge of the false report. *Id.*

In the instant case, appellee alleges he did not learn of the defamatory statements until September 2, 2009, when a Union member attended an executive board meeting and informed the board that several months prior, Mr. McClure stated that appellee was stealing. Appellants claim that this cannot be true and that appellee had reason to be aware of the statements because witnesses claimed Mr. McClure began making the statements in 2007.

When a defendant files an answer to a complaint raising the affirmative defense of statute of limitations, the defendant has the burden of proving the defense. The Court of Appeals has held:

> As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit. And, in the ordinary situation, defendants will have the

burden to both plead and prove the statute as an affirmative defense.

*Newell v. Richards,* 323 Md. 717, 725, 594 A.2d 1152 (1991) (citations omitted).

Here, because appellants alleged the affirmative defense of statute of limitations, they had the burden of proof. Appellee maintained in his complaint that the first instance he became aware that Mr. McClure was stating to others that he was stealing from the Union was on September 2, 2009. After the trial court reversed its prior ruling excluding the pre-September 2009 statements, appellants were aware that they had the burden to establish that they should be excluded. Notwithstanding, appellants did not produce any evidence at trial to support their contention that appellee should have known about the statements prior to 2009. Both appellants had the opportunity to cross-examine appellee's witnesses who testified regarding the disputed statements. However, they were unable to elicit evidence establishing that the witnesses had conclusively notified appellee regarding the statements. As we are required on review, we will assume the truth of the evidence in the light most favorable to the party against whom the motion was brought—in this case, the appellee. Therefore, because appellants did not meet their burden of proving appellee knew of the statements before September 2009, the court properly denied the motions for judgment and allowed the jury to consider the statements. Accordingly, we find no error.

## E. Do *Ex–Parte* Communications Between Trial Court's Law Clerk and Appellee's Counsel Warrant a New Trial?

After the verdict, appellants moved for judgment notwithstanding the verdict, asserting that a new trial was warranted because of improper *ex parte* communications between the trial judge's law clerk and appellee's counsel. On appeal, appellee responds that appellants waived this issue by failing to raise it with the trial court immediately upon notification of the communication. In the alternative, appellee

asserts that the *ex parte* communications created no appearance of impropriety, and therefore, no new trial is warranted. Because appellants raised this issue in a post-trial motion, we find that it is preserved.

The Maryland Code of Judicial Conduct Rule 16–813, section 1, Rule 1.2(b) requires that "[a] judge shall avoid conduct that would create in reasonable minds a perception of impropriety." The comments to the rule explain that "the test for impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with competence, impartiality, and integrity is impaired." The Maryland Rule regulating *ex parte* communications by a judge requires that:

> (a) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge out of the presence of the parties or their lawyers, *concerning a pending or impending matter* . . .

Maryland Code of Judicial Conduct Rule 16–813, section 1, Rule 2.9 (emphasis added).

While there are no civil cases on point, it is an accepted principle in Maryland that a law clerk's conduct is subject to the Maryland Code of Judicial Conduct Rules, especially in regards to *ex parte* communications. This Court has held in criminal matters that *ex parte* communication by a law clerk to a party regarding the substance of a case is a violation of the Maryland Rules. *Smith v. State,* 64 Md.App. 625, 632, 498 A.2d 284 (1985); *see also Harris v. State,* 189 Md.App. 230, 243, 984 A.2d 314 (2009) (judgment affirmed *State v. Harris,* 428 Md. 700, 53 A.3d 1171 (2012)) (citing *Kamelgard v. Am. Coll. Of Surgeons,* 385 Ill.App.3d 675, 324 Ill.Dec. 282, 895 N.E.2d 997, 1002 (2008) (explaining that a law clerk is an extension of a trial judge for purposes of *ex parte* communications)). In *Smith,* the defendant appeared before the circuit court relating to her alleged violation of her probation. 64 Md.App. at 628, 498 A.2d 284. It was revealed that the defendant failed to report to her probation agent on a number of occasions. *Id.* at 629, 498 A.2d 284. She asserted that she

was prescribed bed rest due to her difficult pregnancy, which rendered her unable to report. *Id.* Prior to the court hearing on the matter, the defendant telephoned the trial judge's law clerk and explained that she had experienced bleeding related to her pregnancy. *Id.* At the conclusion of this conversation, the law clerk performed an investigation into her claims by telephoning a hospital to verify them. *Id.* Based on the investigation, the law clerk determined that the defendant had not experienced bleeding complications. *Id.* At the probation violation proceedings, the trial judge called the law clerk to the witness stand to recount the conversation with the defendant and the results of her investigation. *Id.* Relying on the law clerk's testimony, the trial court found the defendant guilty. *Id.* at 630, 498 A.2d 284.

The defendant appealed to this Court, arguing that her due process rights were violated as a result of the *ex parte* investigation performed by the judge through his law clerk. *Id.* We agreed with the defendant, reasoning that *ex parte* communication by a judge transforms a judge from an "impartial arbiter" to an investigator, in violation of the Maryland Rules. *Id.* at 634, 498 A.2d 284. Although the law clerk was the actor, we considered the law clerk's actions as if it were the judge who acted. We concluded that the defendant's due process rights were violated by the judge through his law clerk and reversed and remanded the case for a new hearing before a different judge. *Id.* at 635, 498 A.2d 284.

The Rules concerning *ex parte* communications explicitly prohibit communications regarding a pending matter. Here, the subject matter of the conversation between the law clerk and appellee's counsel was not concerning the pending case. The type of communication between the law clerk and counsel, while ill-advised, is not the type of communication the Maryland Rules seek to prohibit. The record reflects no objection by appellants to the communication at any point until after a verdict was returned. When appellants first raised this issue in its motion for a new trial, the trial court stated:

... I don't want to give the impression that I take this lightly ... And it's something that everyone has to be

aware of and not just with the jury but as you say the appearance of impropriety. I just wonder if there's not a distinction between something being inadvisable, not the smartest thing to do, and tainting a trial to the extent that the trial is set aside. I don't know. I can tell you that what I know from my own personal knowledge is that [law clerk]'s involvement in this particular case was very limited ... [s]he did help me get together the instructions that I wished to give and those were after discussions with counsel. And what I wanted to pull from my own she helped me pull those together. But what that does, I don't know, but I just wanted to put some additional facts in there.

The record indicates that after delivering her application to appellee's counsel, the law clerk entered the jury deliberation room to deliver a pot of coffee and the written jury instructions. Unlike in *Smith*, there is no indication that the law clerk's actions specifically impacted the jury's deliberations or the parties' right to a fair trial. We conclude that the communication between the law clerk and appellee's counsel did not create the appearance of impropriety insofar as the jury deliberative process was concerned.

### F. Was the Economic Damage Award Clearly Erroneous?

At the conclusion of the trial, among other damages awards, the jury awarded appellee $60,000 in financial loss damages. During trial, appellee testified that after he lost the election, he returned to his previous job as a bus dispatcher where he made $400 less per week than he did as an executive board member. Appellants contest this award, maintaining that there was not evidence to support the amount of award.

Preliminarily, we address appellee's assertion that appellants waived this issue by failing to object. The record clearly indicates that when the court and the parties were preparing the jury verdict forms, appellants objected to the jury being provided a line for economic damages, asserting that appellee had presented no evidence on the matter. The court over-

ruled the objection and included the line for economic damages. Therefore, appellants did not waive the issue.

It is long established that in Maryland, a plaintiff may recover economic loss in a defamation suit. *See Jacron,* 276 Md. at 587, 350 A.2d 688. In *Nistico v. Mosler Safe Co.,* 43 Md.App. 361, 405 A.2d 340 (1979), this Court upheld an award for economic damages in a defamation suit. The plaintiff was a union member who sued his employer for defamation. *Id.* at 365, 405 A.2d 340. The employer made statements on multiple occasions that "were intended to convey and did convey, the meaning that [the plaintiff] had been guilty of unsavory or criminal conduct[.]" *Id.* at 365, 405 A.2d 340. As a result of these statements, other employers refused to hire the plaintiff. *Id.* He sued, claiming $100,000 in damages. *Id.* The defendants filed a demurrer [6] alleging that the statements were not actionable, that the plaintiff had not alleged special damages and that his suit was barred under the collective bargaining agreement between the defendant and the plaintiff's union. *Id.* at 363, 405 A.2d 340. The trial court sustained the demurrer and the plaintiff appealed. *Id.*

This Court reversed and remanded the case for consideration by the trial court, deducing that the plaintiff had properly alleged damages. We concluded:

> Finally, it is apparent that [the plaintiff] has alleged actual injury as the result of the defamation. He claims to have suffered injury to his reputation as a citizen and as an iron worker; the loss of employment by [defendant], as well as other employers; and anxiety, vexation, and mental and emotional anguish. All of these are elements of actual harm which ordinarily may be recovered in a defamation action. *See Gertz v. Robert Welch, Inc.,* supra; *Jacron Sales Co.,*

---

6. A demurrer is: "A pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer." BLACK'S LAW DICTIONARY (9th ed. 2009). The demurrer was abolished in Maryland effective July 1, 1984 following the revision of Md. Rule 2–302. *Ungar v. State,* 63 Md.App. 472, 478, 492 A.2d 1336 (1985).

748

*Inc. v. Sindorf,* 276 Md. at 587, 350 A.2d 688. We conclude that actual harm has been alleged in this case....

*Id.* at 367–68, 405 A.2d 340.

Here, appellee alleged that among other damages, he suffered economic loss. In his complaint, he claimed that "as a direct and proximate result of the false and defamatory statements and conduct referenced herein, [p]laintiff was not reelected to the position of Financial Secretary and has thereby suffered a loss of income (including without limitation prospective income) that he would otherwise have earned from that position." During trial, he testified that after being elected Financial Secretary for the first time in 2001, he was reelected twice more. Upon losing the election in 2010, appellee returned to his previous job as a bus dispatcher, where his base salary was $400 less per week. Appellants assert that discovery established that appellee's take home pay was actually more after he lost the election than it was when he was an executive board member. Appellee counters, arguing that this increase is the result of overtime pay and highlights that he was not able to accrue overtime as a board member. The jury was presented with evidence at trial regarding appellee's alleged damages and found the evidence substantial. Therefore, we find no error in the jury's award of economic damages.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**